Carolyn **BIBEAULT**

v.

**HANOVER INSURANCE COMPANY.**

**No. 78–469–Appeal.**

Supreme Court of Rhode Island.

July 11, 1980.

Reargument Denied Aug. 28, 1980.

---

Decof, Weinstein & Mandell, Leonard De-cof, Providence, for plaintiff.

John F. Dolan, Providence, for defendant.

## OPINION

KELLEHER, Justice.

This advisory opinion is rendered to the United States District Court for the District of Rhode Island in accordance with Supreme Court Rule 6. The civil action giving rise to the certified questions currently before us was instituted in the District Court by the plaintiff, Carolyn Bibeault (Carolyn), against the defendant, Hanover Insurance Company (Hanover or the company). Carolyn sought uninsured-motorist coverage and compensatory and punitive damages against Hanover for its alleged bad-faith refusal to settle her insurance claims. A District Court jury awarded Carolyn $15,000 under the uninsured-motorist claims and $20,000 in compensatory and $35,000 in punitive damages for Hanover's bad faith. After hearing Hanover's motions for a directed verdict, a judgment notwithstanding the verdict, and a new trial, the District Court stayed all proceedings pending receipt of our advice.

On June 14, 1975, Carolyn sustained serious injuries as a result of a collision that occurred in Attleboro, Massachusetts, when her automobile was struck head-on by a vehicle that had crossed the center of the road into her lane. The driver of this second vehicle was Oliver Cardoza (Cardoza), a Massachusetts resident and another defendant in the case. Cardoza, who pleaded guilty to the charge of operating negligently so as to endanger, was an uninsured motorist within the meaning of G.L.1956 (1979 Reenactment) § 27–7–2.1 because his insurance provided a maximum coverage of $5,000 per person. Although Cardoza's insurance company offered Carolyn $5,000 in settlement of her claims against him, she could not accept this proposal until her insurer, Hanover, consented in writing to the transaction as required by the terms of the uninsured-motorist section of her policy.

Aware of Carolyn's deteriorating financial situation, which was intensified further by overdue medical bills and her inability to work, Hanover made its consent conditional upon Carolyn's acceptance of $3,500 in settlement of her claims against it.[1] A few months following the execution of this release, Carolyn learned that she might also be entitled to recovery for injuries sustained in the collision pursuant to the uninsured-motorist sections of the policies issued by Hanover to her two sisters, Donna and Dianne. These policies were identical to that purchased by Carolyn and were in effect on the date of the collision. One issue raised at trial and certified to us by the District Court concerns Carolyn's eligibility to recover under these two policies since, at the time of the collision, she was driving her own automobile, a vehicle that did not satisfy the definition of an "insured automobile" as set forth in each policy.[2]

The uninsured-motorist section of each policy, entitled "Family Protection Against Uninsured Motorists," provides:

"The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as

---

1. Carolyn had originally claimed $4,000 in uninsured-motorist benefits from Hanover, a figure calculated by subtracting from the policy's $10,000 limit the $5,000 offered by Cardoza's insurance company and $1,000 previously paid by Hanover for medical bills.

2. Definition (b) of the policy provides:
   " 'insured automobile' means an automobile (1) described in the schedule as an insured automobile to which the bodily injury liability coverage of the policy applies; (2) while temporarily used as a substitute for an insured automobile as described in subparagraph (1) above, when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; (3) while being operated by a named insured or by his spouse if a resident of the same household * * *."

damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile * * *."

The policy defines an "insured" as

"the named insured as stated in the policy (herein also referred to as the 'principal named insured') and any person designated as named insured in the schedule and, *while residents of the same household, the spouse of any such named insured and relatives of either * * *.*" (Emphasis added.)

Donna and Dianne are, therefore, "the principal named insured" within their respective policies. Although Carolyn was not designated as a named insured in the schedule of the policy of either sister, she would, by definition, qualify as an "insured" under both policies if she resided with her sisters at the time of the collision. The jury found that on June 14, 1975, the three Bibeault sisters resided on Front Street in Lincoln, Rhode Island. Thus, Carolyn is clearly an "insured" for purposes of both policies.

The key point of contention arises over the applicability of an exclusion found in the uninsured-motorist section of all three policies which exempts from coverage any

"bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by a named insured or any relative resident in the same household * * *."

Hanover contends that since Carolyn, at the time of the collision, was driving her own vehicle, which was not described as an "insured automobile" in the policy of either sister, the exclusion bars any recovery under her sisters' policies. Hanover claims that the validity of an identical exclusion was recognized in *Employers' Fire Insurance Co. v. Baker*, R.I., 383 A.2d 1005 (1978), where an insured was seeking to recover uninsured-motorist benefits for injuries she received when her motorcycle collided with an uninsured vehicle and the insured automobile described in the policy was the insured's Ford Mustang. Hanover gains no comfort from the exclusionary language it cites or from the plurality holding in *Baker* because, as Carolyn points out, there is additional language found in the exclusion which in plain and simple terms creates an "exception," if you will, to the "exclusion." The exceptional language provides:

"but this exclusion does not apply to the principal named insured or his relatives while occupying or if struck by an automobile owned by an insured named in the schedule or his relatives."

A reading of the exclusion in conjunction with the exception reveals that there is a class of individuals who may benefit from the uninsured coverage notwithstanding the taking-away language of the exclusion.

We need look no further than the actual wording of the policy to reach the obvious conclusion that Carolyn is not subject to the exclusion. Substituting the characters of this case into the exception, it reads,

"but this exclusion does not apply to the principal named insured [Donna or Dianne] or [her] relative [Carolyn] while occupying an automobile owned by an insured named in the schedule [Donna or Dianne] or [her] relatives [Carolyn]."

At the time of Carolyn's collision, she was related to both Donna and Dianne and was occupying an automobile owned by a relative of each of the named insured. Thus, in this controversy the exclusion is just so much verbiage, and Carolyn may look to her policy and those of her sisters for the uninsured-motorist coverage each provides as long as the total recovery does not exceed her total loss. *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 282 A.2d 584 (1971).

The second and final issue certified by the District Court presents the question of whether an insurer's bad-faith withholding of insurance payments gives rise to an independent claim for breach of duty owed to the insured. Hanover contends that this

issue is controlled by the recent case of *A.A.A. Pool Service & Supply, Inc. v. Aetna Casualty & Surety Co.*, R.I., 395 A.2d 724 (1978), wherein this court refused to recognize an independent claim for a bad-faith withholding of payments under the standard fire insurance policy. This decision was based not upon our disapproval of the claim in question, but rather upon our reluctance to intrude into the area of fire insurance, a field clearly preempted by the Legislature through G.L.1956 (1979 Reenactment) § 27–5–3. This section sets forth in detail the form and terms of the standard fire insurance policy which must be included within any policy or contract of fire insurance on property situated within the state. In the *A.A.A. Pool Service & Supply* case, we concluded that the Legislature must have been cognizant of the fact that § 27–5–3 limited an insured's total potential recovery to the actual value of property damaged. In declining to expand the liability of the insurance company, we answered

> "only the question posed by the District Court, and we venture no opinion about whether an independent cause of action will arise by reason of a bad-faith withholding of a payment under any type of insurance policy other than the standard fire insurance policy for the State of Rhode Island." *A.A.A. Pool Service & Supply, Inc. v. Aetna Casualty & Surety Co.*, R.I., 395 A.2d 724, 726 (1978).

Recently, in *DiIorio v. Abington Mutual Fire Insurance Co.*, R.I., 402 A.2d 745 (1979), we also refused to recognize an independent claim in tort for the bad faith of an insurer. This decision was based, however, on the trial justice's finding of insufficient evidence to support a jury question on the issue of bad faith. In *DiIorio*, there was a genuine question regarding the insured's

coverage under a homeowner's policy that included the standard fire insurance policy. Although there is some language in *DiIorio* which seems to indicate that the principles of *A.A.A. Pool Service & Supply* would be applied to policies other than the standard fire insurance policy, our holding in *A.A.A. Pool Service & Supply* was never intended to extend to any contract of insurance other than the standard fire insurance policy described in the statute.

Hanover argues that the reasoning of *A.A.A. Pool Service & Supply* is equally applicable in this case because the uninsured-motorist provisions of its policies are statutorily mandated by § 27–7–2.1. We cannot agree. Section 27–7–2.1 merely requires that all automobile insurers offer uninsured-motorist coverage equal to or above the minimum limit established by G.L.1956 (1968 Reenactment) § 31–31–7 (1979 Supp.). This is entirely different, however, from § 27–5–3 wherein the Legislature has expressly prescribed in every detail the terms of the standard fire insurance policy. We are, therefore, unwilling to find that the simple requirement of § 27–7–2.1 that an insurer afford the general public with the opportunity of purchasing uninsured-motorist coverage suggests a legislative intent to limit the liability of an insurer in this area of uninsured-motorist coverage. Indeed, in the case of *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 152, 282 A.2d 584, 590 (1971), we observed that in § 27–7–2.1, "[t]he Legislature fixes a minimum, rather than a maximum, standard of protection. There is no ceiling upon the insured's right of recovery."[3]

In the absence of a legislative intent to the contrary, Carolyn urges us to adopt the position taken by a growing number of jurisdictions that recognize an independent cause of action in tort for an insurer's bad-

---

**3.** In *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 152, 282 A.2d 584, 590 (1971), we also indicated that through G.L.1956 (1979 Reenactment) § 27–2–2.1 the Legislature intended to protect an insured against his actual loss. We did not, however, address the question of whether § 27–7–2.1 limits recovery to damages for actual loss, for in *Pickering* there was no indication of bad faith on the part of the insurer. Consequently, actual damages in that case provided the insured with adequate compensation.

faith refusal to deliver payments due under a contract of insurance.[4]

The first case to recognize the need for a new tort in the area of first-party insurance law was *Fletcher v. Western National Life Insurance Co.*, 10 Cal.App.3d 376, 89 Cal. Rptr. 78 (1970). In that case, a California Court of Appeals held that an insurer's bad-faith withholding of payments due under an insurance policy was a breach of the implied-in-law duty of good faith and fair dealing owed to its insured. This decision extended the well-established duty of an insurer in the context of liability insurance to act reasonably and in good faith in settling third-party claims against insureds. *See Crisci v. Security Insurance Co.*, 66 Cal.2d 425, 426 P.2d 173, 58 Cal.Rptr. 13 (1967); *Wilson v. Aetna Casualty & Surety Co.*, 145 Me. 370, 76 A.2d 111 (1950); *Rova Farms Resort, Inc. v. Investors Insurance Company of America*, 65 N.J. 474, 323 A.2d 495 (1974). In the subsequent decision of *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973), the California Supreme Court followed the reasoning of *Fletcher* in concluding that an independent cause of action in tort exists against insurance companies for breach of their implied-in-law duty of good faith and fair dealing.

The California courts and those jurisdictions that have chosen to adopt this theory of recovery recognize the problems inherent in an insured's claim based solely on contract. Traditionally, recovery in contract for breach of a unilateral or independent obligation to pay a certain sum of money is confined to the actual amount owed under the contract plus legal interest. *A.A.A. Pool Service & Supply, Inc. v. Aetna Casualty & Surety Co.*, R.I., 395 A.2d 724 (1978); Williston, *Contracts* § 1410 at 604 (3d ed. 1968). Recovery under a contract theory alone, therefore, effectively guards an insurer's pocketbook against any threat of punitive damages.

In this atmosphere, insurers, backed by sufficient financial resources, are encouraged to delay payment of claims to their insureds with an eye toward settling for a lesser amount than that due under the policy. The potential loss could never exceed the contract amount plus interest. Thus, when the legal rate of interest is lower than the commercial rate, an unscrupulous insurer would be wise to delay payment for the maximum period of time. The inequity of this situation becomes particularly apparent in the area of disability insurance in which the insured, often pursued by creditors and devoid of bargaining power, may easily be persuaded to settle for an amount substantially lower than that provided for in the insurance contract.[5]

4. *United Services Automobile Association v. Werley*, 526 P.2d 28 (Alaska 1974); *John Hancock Mutual Life Insurance Co. v. McNeill*, 27 Ariz.App. 502, 556 P.2d 803 (1976); *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973); *Grand Sheet Metal Products Co. v. Protection Mutual Insurance Co.*, 34 Conn.Supp. 46, 375 A.2d 428 (1977); *Ledingham v. Blue Cross Plan*, 29 Ill. App.3d 339, 330 N.E.2d 540 (1975), *rev'd on other grounds*, 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75 (1976); *Amsden v. Grinnell Mutual Reinsurance Co.*, 203 N.W.2d 252 (Iowa 1972); *Standard Life Insurance Company of Indiana v. Veal*, 354 So.2d 239 (Miss.1978); *United States Fidelity & Guaranty Co. v. Peterson*, 91 Nev. 617, 540 P.2d 1070 (1975); *State Farm General Insurance Co. v. Clifton*, 86 N.M. 757, 527 P.2d 798 (1974); *Corwin Chrysler-Plymouth, Inc. v. Westchester Fire Insurance Co.*, 279 N.W.2d 638 (N.D.1979); *Christian v. American Home Assurance Co.*, 577 P.2d 899 (Okl.1977); *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978).

5. *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 510 P.2d 1032, 108 Cal.Rptr. 480 (1973), and its successors may encourage misguided insurers to alter their policies. As Langdon and Sytsma suggest in *The Duty of Good Faith and Fair Dealing and the Pre-Adjudicatory Role of the Insurance Company Advocate*, 45 Ins. Counsel J. 309, 313 (1978),

> "the best advice to submit to an insurance company client is that contained in a paper recently presented to the Association of Life Insurance Counsel—to have the company tighten up its claims practices, treat all of its policy holders with more consideration than may have been the case in the past, and use greater care in the selection and training of its claims personnel. 'The old objective of the claims man "to find the loophole" is at an end.' "

The members of this court are of the opinion that an insurer doing business in Rhode Island is obligated to act in good faith in its relationship with its policyholders. A violation of this duty will give rise to an independent claim in tort in which, as in the present controversy, there has been a specific finding that the insurer has in bad faith refused to pay the claims due an insured. Recognition of this tort in Rhode Island does not, however, imply that whenever an insurance company loses a dispute in court regarding the validity of a claim, it breaches the implied-in-law duty of good faith. If a claim is "fairly debatable," no liability in tort will arise. We quote with approval the test established by the Supreme Court of Wisconsin:

> "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. * * * implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured."
> Anderson v. Continental Insurance Co., 85 Wis.2d 675, 691, 693, 271 N.W.2d 368, 376–77 (1978).

The duty of an insurer to deal fairly and in good faith with an insured is implied by law. Since violation of this duty sounds in contract as well as in tort, the insured may obtain consequential damages for economic loss and emotional distress and, when appropriate, punitive damages. Christian v. American Home Assurance Co., 577 P.2d 899 (Okl.1977). In regard to punitive damages, we would point out that the intent necessary to establish the tort of bad faith is not equivalent to the intent that would sustain an award for punitive dam-

ages. Punitive damages may only be awarded when an insurer has acted with malice, wantonness, or wilfulness. Berberian v. New England Telephone & Telegraph Co., 117 R.I. 629, 369 A.2d 1109 (1977); Corwin Chrysler-Plymouth, Inc. v. Westchester Fire Insurance Co., 279 N.W.2d 638 (N.D.1979). With respect to attorneys' fees, we are reluctant to depart from our well-established rule that, in the absence of contractual or statutory authorization, such fees may not be awarded as a separate item of damages. Orthopedic Specialists, Inc. v. Great Atlantic & Pacific Tea Co., R.I., 388 A.2d 352 (1978); Waite v. Board of Review of Department of Employment Security, 108 R.I. 177, 273 A.2d 670 (1971); 4 Restatement (Second) Torts § 914 at 492 (1977). If attorneys' fees are to be awarded for breach of an insurer's duty to deal fairly and in good faith with its insured, the choice should be made by the Legislature.[6]

Having had our say, we conclude by giving an affirmative response to the District Court's initial inquiry. Our response to the court's second question is a mixed one. An insurer's bad-faith refusal to settle an insurance claim can give rise to an independent tort action that can result upon a proper showing of an award of both compensatory and punitive damages. We perceive, however, no statutory or contractual basis for an award of a fee to Carolyn's counsel.

## APPENDIX

### The Certified Questions:

"1. Is Plaintiff entitled to recover under the uninsured motorist coverage of two policies of automobile liability insurance purchased by her two sisters, with whom she resided, from the same insurance company (Hanover) from which Plaintiff purchased uninsured motorist coverage, or is Plaintiff precluded from recovery because the automobile which she operated at the time of the injuries to her was designated as an insured automobile under the terms of her

---

**6.** In the area of workers' compensation, for example, the Legislature has, in G.L.1956 (1979

Reenactment) § 28–35–32, awarded attorneys' fees to successful employees in certain cases.

**320**

policy of insurance but was not designated as an insured automobile under the terms of her sisters' policies?

"2. Does an insurer's bad faith refusal to settle an insurance claim give rise to an independent cause of action for breach of a duty owed to the insured resulting in liability for compensatory damages for economic loss and emotional distress, punitive damages and attorney's fees?"