**CONANICUT MARINE SERVICES, INC.**

v.

**INSURANCE COMPANY OF NORTH AMERICA.**

**No. 85–355–Appeal.**

Supreme Court of Rhode Island.

June 26, 1986.

---

William R. Harvey, Sheffield & Harvey, Newport, for plaintiff.

John G. Rallis, Boyer Reynolds & De-Marco, Providence, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is a civil action brought by the plaintiff to recover settlement and defense costs as a result of the defendant's failure to defend the plaintiff in a tort action pursuant to a contract of insurance. The case is before us on the defendant's appeal from a judgment of the Superior Court granting the plaintiff's prayer for relief.

The facts are not in dispute. The plaintiff purchased an insurance policy from defendant to insure its marina operation, Conanicut Marine, located at Ferry Wharf in Jamestown. The policy was entitled "Boat Dealers/Repairs And Marina Operators Policy" and was in effect during the period April 18, 1980, to April 18, 1981.

The incident that gave rise to this action occurred at the Marina on August 31, 1980. On that day Jeanne Gardner, a customer of plaintiff's,[1] was transported from her moored sailboat to the dock area in a motor launch operated by plaintiff's employee.[2]

---

1. Ms. Gardner had a contract with plaintiff for mooring and launch service from May 1980 through October 1980.

2. The parties stipulated that plaintiff's employee, George Kirschner, was employed as a dockmaster and fuel-dock attendant and was neither licensed nor certified as a launch operator. In refusing to assume liability under the policy, defendant relied upon a warranty provision in the insurance contract that states "that the assured will conform to all local, state and federal laws pertaining to persons allowed to navigate boats and restrictions thereon." The defendant notes that 46 U.S.C.A. § 1461 (b) and (e) (West 1975) (repealed by Pub. L. 98–89, § 4(b) (August 26, 1983) ), requires that operators of passenger vessels be licensed by the secretary and since Mr. Kirschner was not licensed to operate the launch on the date of the incident, the warranty

Ms. Gardner was injured as she disembarked from the motor launch to the dock. She subsequently filed suit on April 3, 1981, against plaintiff alleging that plaintiff was liable for its employee's negligent operation of the vessel.

According to the parties' stipulation of facts, plaintiff immediately notified defendant of the claim and offered its assistance and full cooperation. The defendant's reply was a refusal to defend plaintiff on the ground that the policy was a contract of indemnity and not a general-liability policy and further that plaintiff had breached a provision of the policy.[3]

On November 5, 1982, plaintiff filed a petition for a declaratory judgment, requesting that the court construe the language of the insurance policy to determine the nature of coverage provided.[4] The defendant subsequently filed a motion for summary judgment that was denied on January 6, 1984.

In January 1984, after three days of trial, the case against plaintiff was settled for $18,000 plus attorneys' fees and costs.[5] On February 3, 1984, plaintiff filed a second complaint against defendant, alleging that defendant had breached its obligation to defend and insure plaintiff pursuant to the contract of insurance and that defendant was liable for the costs and expenses incurred. Both suits were consolidated for trial, and on July 23, 1985, judgment was entered for plaintiff and defendant subsequently filed an appeal with this court.

The defendant raises basically two issues for review: (1) whether the contract of insurance is a general-liability policy or a policy of indemnity and (2) whether defendant is required to pay the $18,000 settlement.

I

The defendant contends that when read in its entirety, the insurance contract clearly denotes that it is a policy of indemnity. The defendant relies in particular upon a portion of the policy that states that defendant will pay the insured:

"such sums so paid or which may be required to indemnify * * * for such loss. * * * No liability shall attach * * until the liability of the assured has been determined by final judgment against the assured or by agreement between the assured and the plaintiff with the written consent of this company."

It is defendant's contention that based upon the language noted above, defendant's obligation to pay or indemnify the insured does not arise until after the insured has paid a judgment or a settlement has been reached with defendant's consent.

However, plaintiff contends that the language is ambiguous and that the policy does not state that payment of a judgment by plaintiff is required before liability attaches.[6] The plaintiff also directs this

---

provision of the contract was breached. We shall not address the issue of coverage since we find that defendant had an absolute duty to defend under the policy. *See also infra,* footnote 10.

**3.** *See* footnote 2, *supra.*

**4.** General Laws 1956 (1985 Reenactment) § 9–30–2 provides:

"Power to construe.—Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of

rights, status or other legal relations thereunder."

**5.** The costs incurred by plaintiff as a result of the defense and trial in *Jeanne M. Gardner v. Conanicut Marine Services, Inc. and George Kirschner,* C.A. No. 81–103 included a settlement fee of $18,000, attorneys' fees of $5,000, and "cash paid out" in the amount of $119.75.

**6.** The plaintiff notes that the "no action" clause in the policy does not refer to payment of a judgment. Rather, it states,

"[n]o action shall be against this company for the recovery of any loss sustained by the assured unless such action be brought against this company within one (1) year *after the final judgment or decree is entered* in the

court's attention to the language in the policy regarding plaintiff's obligation to cooperate with defendant in its legal representation of plaintiff.[7] Moreover, plaintiff notes that the title of the insurance contract does not include the word "indemnity" and that nowhere in the policy does it state that defendant has no duty to defend the insured unless it chooses to do so.

The trial justice found that because of ambiguities throughout the insurance policy, the contract would be construed as a general-liability policy. We agree.

This court has held that in interpreting the language of an insurance policy we are bound by the rules for the construction of contracts and we will give the words used in the policy their plain, ordinary, and usual meaning. *Malo v. Aetna Casualty and Surety Co.,* 459 A.2d 954 (R.I.1983). Where an ambiguity exists in the policy, we will construe those terms so as to favor the insured. *Id.* at 956.

We find that an ambiguity exists in the language of the policy in question. We are convinced that an ordinary purchaser of insurance reading the policy in question would not be aware that it is a policy of indemnity with no obligation on the part of the insurer to defend the insured. The title of the policy does not indicate that it is an indemnity policy, and defendant has failed to identify the specific language in the policy that states that defendant has no duty to defend plaintiff in any contested matter. Furthermore, where the policy provides (1) that the insured must immediately notify the insurer of any claim or loss, (2) that the

insurer will defend actions growing out of contested cases of liability, and (3) that the insured shall not assume any obligations, admit any liability or incur any expense without written approval of the insurer, it is generally held to be a contract against liability for damages and not a contract of indemnity. 44 C.J.S. *Insurance* § 24 (1945); *see also Martin v. Zurich General Accident & Liability Ins. Co.,* 84 F.2d 6, 8–9 (1st Cir.1936).

Based upon our reading and scrutiny of the insurance policy, we hold that the insurance contract is a general-liability policy and that defendant had an obligation under the policy to defend plaintiff in the tort action.

## II

Second, defendant argues that if the contract of insurance is construed to be a general-liability policy, defendant should not be required to pay the $18,000 settlement award since it has not had the opportunity to contest the issue of coverage.[8] The defendant maintains that the duty to defend is broader than and independent of the duty to indemnify and that breach of an insurer's duty to defend should not foreclose litigation of the separate issue of whether a loss is covered under the policy. The defendant urges this court to hold that where an insurer in good faith refuses to defend an insured the insurer will not be required to pay settlement or damages awarded against the insured until the issue of coverage has been determined. However we are not persuaded by defendant's

litigation against the assured, or in case the claim against this company accrues without the entry of such final judgment or decree, unless such action be brought within one (1) year from the date of the payment of such claim." (Emphasis added.)

7. The policy states:
"The assured and his representatives shall cooperate with this company and shall not assume any obligations, admit any liability or incur any expense for which this company may be liable, without the written approval of this company * * *. In case the liability of

the assured shall be contested, with the written approval of this company first obtained, this company will pay the cost and expenses of such defense in which event this company shall have the option of naming attorneys who shall represent the assured in the said defense, and if such option is exercised, shall have the exclusive direction and control thereof."

8. However, defendant concedes that it would be obligated to pay the costs and expenses of defense and attorneys' fees if it is determined that the contract is a general-liability policy.

arguments and refuse to adopt such a ruling.

In *Flori v. Allstate Insurance Co.,* 120 R.I. 511, 513, 388 A.2d 25, 26 (1978), we stated that "an insurer's duty to defend hinges not on whether the insured may ultimately be liable, but on whether the complaint in the underlying tort action alleges facts and circumstances bringing the case within the coverage afforded by the policy." The allegations of Ms. Gardner's complaint meet this test. She alleged that plaintiff was negligent in its capacity as employer of the person who caused her injuries while operating plaintiff's launch vessel. The policy stated that defendant would pay the costs of defense, have the option of naming the attorneys, and have exclusive control of the litigation arising from any claim involving plaintiff's ownership or operation of any of its boats. The complaint clearly alleges facts sufficient to bring the claim within the purview of the policy.

We agree with the court's statement in *Comunale v. Traders & General Insurance Co.,* 50 Cal.2d 654, 660, 328 P.2d 198, 202 (1958) that:

> "[a]n insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract."[9]

*See also Saragan v. Bousquet,* 322 Mass. 14, 75 N.E.2d 649 (1947) (insurer and insured are bound by the results of an action by a third party against insured, and insurer is obligated to pay expenses and judgment award whether insurer assumed defense of action or refused to do so without legal justification).

We hold that where an insurer refuses to defend an insured pursuant to a general-liability policy, the insurer will be obligated to pay, in addition to the costs of defense and attorneys' fees, the award of damages or settlement assessed against the insured.[10] Therefore, as a result of the defendant's breach of its duty to defend the plaintiff, it is obligated to pay the $18,000 settlement award plus any interest thereon, in addition to the costs of defense.

Accordingly, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the case is remanded to the Superior Court for further proceedings consistent herewith.

---

**9.** Moreover, the court allowed recovery in excess of the policy limit stating that "[t]he policy limits restrict only the amount the insurer may have to pay in the performance of the contract as compensation to a third person for personal injuries caused by the insured; they do not restrict the damages recoverable by the insured for a breach of contract by the insurer." *Comunale v. Traders & General Insurance Co.,* 50 Cal.2d 654, 659, 328 P.2d 198, 201 (1958).

**10.** We note that defendant could have exercised one of two options instead of completely refusing to defend plaintiff. It could have entered

into a nonwaiver agreement with plaintiff whereby it agreed to defend plaintiff and plaintiff recognized the right of defendant to question coverage, or defendant could have brought an action against plaintiff for a declaratory judgment on the question of coverage. *See, e.g., Clemmons v. Zurich General Accident and Liability Insurance Co.,* 230 So.2d 887 (La.Ct.App. 1969). In failing to reserve its right to contest coverage, defendant assumed the risk of being found in breach of its duty to defend at a subsequent time.