**RUMFORD PROPERTY AND LIABILITY INSURANCE COMPANY**

v.

**George CARBONE and Abraham Nathanson.**

No. 89–362–A.

Supreme Court of Rhode Island.

April 30, 1991.

Frank N. Ray, Licht & Semonoff, Thomas C. Angelone, Charles P. Cavas, Hodosh, Spinella & Angelone, Providence, for plaintiff.

Richard Bicki, Peter J. Cerilli, Cerilli, McGuirl & Bicki, Providence, for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on the defendants' appeal from the trial justice's granting of the plaintiff's motion for a directed verdict. We affirm. The facts of the case insofar as they are pertinent to this appeal are as follows.

The defendants, George Carbone (Carbone) and Abraham Nathanson (Nathanson), were the owners of property located at 494 Woonasquatucket Avenue in North Providence. The property consisted of approximately four and one-half acres of land upon which was situated a building with about 100,000 square feet of floor space. Just before closing on the property, Carbone and Nathanson obtained an insurance policy with Aetna, which contained a $300,000 liability limit.

After moving their own business into the first floor of the new building, defendants decided to maximize their investment by renting the unused portion of their building. The defendants thereafter rented a portion of the building on a weekly basis to a bingo operation d/b/a Allendale Leasing. According to Carbone, the rental was conditioned upon Allendale's obtaining an insurance policy listing defendants and the bingo operator as the named insured, with coverage equal to that provided by defendants' existing Aetna policy. Such a policy was issued by Rumford Property and Liability Insurance Company (Rumford), plaintiff in this action.

On August 4, 1981, a bingo patron, Marie Sicilia, allegedly injured her leg in the parking lot of the Woonasquatucket Avenue property. She later filed a lawsuit claiming $1 million in damages against Allendale Leasing and defendants. The defendants received notice of Sicilia's claim from her attorney, and since she had been a bingo patron, they forwarded the claim to Rumford.

Upon receiving the claim, Rumford wrote to defendants informing them that Rumford's in-house counsel, Michael Mulcahy, would represent them and also suggesting that they might want to obtain private counsel to defend their personal exposure of $700,000.

Although outside counsel informed Rumford that the Allendale policy contained no exclusion for the parking lot, internally Rumford treated defendants' claim as a no-coverage file. It conducted telephone interviews with Carbone and Nathanson for the purpose of investigating the claim but did not indicate that Rumford was considering denial of the claim.

Because of its ongoing doubt that the Sicilia claim was covered by the Allendale policy, Rumford sent Carbone a "reservation of rights" letter and filed a declaratory-judgment action to determine its liability for this claim. Rumford obtained a default judgment since no answer to its complaint was filed on behalf of defendants. Actually defendants claimed that they were not even aware of Rumford's denial of coverage until their Aetna attorney informed them of the default judgment entered against them. The defendants were successful in having the default judgment vacated and thereafter filed an answer and a counterclaim, alleging that Rumford had acted in bad faith and wrongfully refused to provide defendants with a defense and coverage for the Sicilia incident, in violation of both the common law and G.L.1956 (1985 Reenactment) § 9-1-33. The trial justice dismissed plaintiff's declaratory-judgment action after it was heard on September 22, 1987. Furthermore, the trial justice entered judgment in favor of defendants on count 1 of their counterclaim, which sought a declaration that plaintiff was obligated to provide them with a defense and coverage.[1]

1. Following this decision, both Aetna and Rumford contributed to Sicilia's $112,000 settlement.

Count 2 and count 3 of defendants' counterclaim, which alleged breach of contract and bad faith, respectively, came to trial in February 1989. Rumford moved for a directed verdict on both counts at the close of defendants' case. The court granted Rumford's motion for directed verdict on count 2 but reserved judgment on count 3 and allowed it to go to the jury. The jury found bad faith on Rumford's part and awarded each defendant $35,000 as compensation for emotional distress. Following the verdict, the trial justice granted Rumford's motion for directed verdict on count 3. He held that there was a debatable issue of coverage, "and that it was perfectly legitimate for Rumford to try to get out of the liability coverage insofar as the Sicilia claim [was] concerned," and that he did not find "without taking illegitimate inferences, that [Rumford] acted in bad faith." The defendants filed a timely appeal.

The sole issue in this case is whether the directed verdict on defendants' bad faith claim was appropriate.[2] In *Bibeault v. Hanover Insurance Co.*, 417 A.2d 313, 319 (R.I.1980), this court held that "an insurer doing business in Rhode Island is obligated to act in good faith in its relationship with its policyholders." We also held that a violation of that obligation would give rise to an independent tort claim—for which the insured could recover economic loss, emotional distress, and even punitive damages. *Id.* Soon after *Bibeault* the Legislature codified this cause of action by passing G.L.1956 (1985 Reenactment) § 9-1-33, which states in pertinent part:

"[A]n insured under any insurance policy as set out in the general laws or otherwise may bring an action against the insurer issuing said policy, when it is alleged said insurer wrongfully and in bad faith refused to pay or settle a claim made pursuant to the provisions of said policy, or otherwise wrongfully and in

bad faith refused to timely perform its obligations under said contract of insurance."

The standard for proving bad faith was recently pronounced by this court in *Bartlett v. John Hancock Mutual Life Insurance Co.*, 538 A.2d 997 (R.I.1988). "There cannot be a showing of bad faith when the insurer is able to demonstrate a reasonable basis for denying benefits." *Id.* at 1000. This language reiterates the standard espoused in *Bibeault.* "If a claim is 'fairly debatable,' no liability in tort will arise." 417 A.2d at 319.

We also held in *Bartlett* that the plaintiff must prove that the insurer breached its obligation under the insurance contract before bad faith may be considered. In so holding, this court recognized the Alabama standard found in *National Savings Life Insurance Co. v. Dutton*, 419 So.2d 1357 (Ala.1982). In *Dutton* the Alabama Supreme Court indicated that the plaintiff had a "heavy burden" in attempting to prove an insurer's bad-faith refusal to pay a valid insurance claim. The court held that as part of a plaintiff's prima-facie case, he or she must offer proof sufficient to entitle him or her to a directed verdict on the contract claim. "Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury." *Id.* at 1362.

The defendants argue that Rumford's conduct with respect to the Sicilia claim clearly demonstrates a breach of contract. They point out that Rumford informed Sicilia's attorneys that it would deny coverage of her claim yet failed to inform defendants, filed a declaratory-judgment suit against defendants and then concealed the entry of default judgment, and failed to disclose or remove conflicts of interests. They claim that by eventually paying the underlying claim, Rumford did not relieve

---

**2.** In their brief, defendants claim several errors at the trial level, including the trial justice's wrongfully admitting testimony of a witness who was not shown to be unavailable, failing to instruct the jury on the issue of punitive damages, and wrongfully excluding evidence that

Rumford's in-house counsel intended to conceal a default judgment from defendants. These issues relating to information presented to or withheld from the jury are irrelevant since we hold that the trial justice properly granted a directed verdict for plaintiff.

itself from liability regarding breach of contract or bad faith.

The plaintiff concedes that it sent Sicilia's attorneys a denial-of-coverage letter and that it treated defendants' claim as a denial-of-coverage situation within the company. Apparently Rumford was not certain that coverage would indeed be denied and used the issue as a "bargaining chip" with Aetna in an effort to minimize its potential liability under the claim. According to Rumford's president, Richard L'Europa, despite the internal treatment of the claim, Rumford did not take any of the ordinary steps consistent with denying coverage, such as withdrawing representation and sending a "denial of coverage" letter.

The application submitted to plaintiff by Allendale Leasing described the insured as engaged in a bingo operation, but as L'Europa testified, "494 Woonasquatucket Avenue was not just some little building, it was a huge facility with a hundred thousand square feet of river, bridge, an enormous parking lot, none of which showed up on the Rumford policy, and certainly not for a premium of $574." Despite the fact that one of the boilerplate provisions in the Rumford policy provides that "'insured premises' means all premises owned by or rented to the named insured with respect to which the named insured is afforded coverage for bodily injury liability under this policy and includes the ways immediately adjoining on land," the calculations used to determine the premiums of the policy did not include the square footage of the parking lot. Additionally the schedules contained in the policy referred only to the personal property of the bingo operation and the areas in which it was located.

The exclusion of the parking-lot area from premium calculations, together with the limited schedules contained in the policy, creates at least an arguable basis for denying coverage. Although the omissions in the policy schedule and the disproportionately low premium may only have been the unilateral mistake of Rumford, it may well have formed the basis for a contention that there was a mutual mistake of fact and that both parties intended the policy to cover that portion of the premises dedicated to the bingo operation. This contention was rejected by the justice who heard the declaratory-judgment action, but the issue was not a frivolous one. The debatable issue of fact, regarding coverage, required to prevent the issue of bad faith from reaching the jury, existed in this case. *National Savings Life Insurance Co. v. Dutton*, 419 So.2d 1357 (Ala.1982). Rumford's conduct was certainly not exemplary, but it failed to reach the level of bad faith.

■ Rumford did not simply deny coverage and neglect to inform defendants. It eventually sent Carbone and Nathanson a "reservations of rights letter" (although it contained an error) and initiated a declaratory-judgment action to determine its duties under the contract of insurance. Although decided after the case at bar, *Conanicut Marine Services, Inc. v. Insurance Company of North America*, 511 A.2d 967 (R.I.1986), indicates that an insurer wishing to avoid liability may enter into a nonwaiver agreement to defend an insured and later question coverage or bring a declaratory-judgment action on the question of coverage. *Id.* at 971 n. 10. Rumford's actions may be viewed as efforts to clarify its rights rather than bad-faith maneuvers to avoid payment.

In accordance with the contract, Rumford appointed its in-house counsel, Michael Mulcahy, to represent defendants. Mulcahy entered his appearance on behalf of defendants on February 18, 1983, and maintained intermittent contact with defendants' Aetna attorney, Paul Curcio. Mulcahy indicated that he regarded Curcio as defendants' lead counsel with regard to the Sicilia claim and, furthermore, that it was not his place to determine whether there was coverage. He believed his primary responsibility was simply to keep himself apprised of the situation so that if the case was settled, he would be able to discuss with Curcio the relative amounts of contribution between Rumford and Aetna.

■ After the default judgment was set aside and the trial justice determined that there was coverage for Sicilia's claim under the Rumford policy, plaintiff contributed,

along with Aetna, to the $112,000 settlement. Payment in and of itself will not eradicate independent evidence of an insurer's bad faith. In this case, however, the delay in payment of the claim was prompted by a valid question of coverage.

Rumford's belief that the policy covered the defendants only with respect to Allendale's bingo operation, and not the entire complex, was not baseless. The formula for rating the policy was based on the square footage of the area that housed the bingo games and the value of the bingo equipment. Furthermore, as the trial justice noted in granting Rumford's directed-verdict motion on the breach-of-contract claim "[t]hey provided a defense, they paid the claim," indicating that a breach of contract did not occur. The existence of an arguable question of fact regarding coverage, in addition to the provision of a defense, albeit scant, and the eventual contribution to the settlement of the third-party claim, precludes a finding of bad faith.

For the reasons stated, the defendants' appeal is denied and dismissed. The judgment entered below is affirmed, and the papers in the case may be remanded to the Superior Court.