# United States Court of Appeals
## For the First Circuit

No. 23-1673

TIFFANY BRIERE, individually and as parent and
guardian of M.P., a minor,

Plaintiff, Appellant,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.;
FIRST STUDENT, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary S. McElroy, U.S. District Judge]

Before

Barron, Chief Judge,
Lipez and Kayatta, Circuit Judges.

Michael G. Sarli, with whom Stephen J. Sypole and Gidley, Sarli & Marusak LLP were on brief, for appellant.
Elizabeth F. Ahlstrand, with whom Squire Patton Boggs (US) LLP, Syd A. Saloman, and Melick & Porter, LLP were on brief, for appellee National Union Fire Insurance Company of Pittsburgh, PA.
Kristina I. Hultman, with whom Derek M. Gillis and Barton Gilman LLP were on brief, for appellee First Student, Inc.

September 19, 2024

**KAYATTA, Circuit Judge.** This appeal presents an insurance coverage dispute between National Union Fire Insurance Company of Pittsburgh ("National Union") and its insured, Tiffany Briere. Briere and her minor daughter were passengers in a school bus owned by First Student. First Student insured the bus by purchasing a primary business automotive policy from National Union. The bus collided with two passenger vehicles in Rhode Island, injuring Briere and her daughter.

Briere submitted a claim to National Union for underinsured motorist benefits. National Union denied the claim in a letter to Briere, noting only that First Student had "elected to reject [underinsured motorist coverage], as it [was] permitted to do." Briere then sued National Union in federal court, arguing that under Rhode Island law -- specifically R.I. Gen. Laws § 27-7-2.1(a) -- the policy had to offer underinsured motorist coverage. First Student intervened to defend National Union. The court granted summary judgment to National Union and First Student, finding that because the policy was not "delivered or issued for delivery" in Rhode Island, § 27-7-2.1(a) did not apply.

We do not decide whether the district court correctly interpreted § 27-7-2.1(a). Rather, we find that, in denying coverage, National Union never claimed that the policy was not "delivered or issued for delivery" in Rhode Island within the meaning of § 27-7-2.1(a). Accordingly, the company could not later

deploy that argument to show that the policy excluded underinsured motorist coverage. Because the district court relied entirely on National Union's waived interpretation of § 27-7-2.1(a)'s delivery requirement -- and therefore did not have occasion to consider other defenses -- we vacate the grant of summary judgment to Defendants and remand for further proceedings. Our reasoning follows.

## I.

### A.

On December 1, 2018, Briere and her daughter were passengers on a Rhode Island-registered bus owned by First Student. The bus collided with two other vehicles, both operated by underinsured drivers (i.e., drivers whose liability exceeded the limits of their insurance policies). Briere and her daughter were allegedly injured. Four days later, Briere sued First Student, the bus driver, and the two underinsured motorists in Rhode Island state court. Briere eventually settled with the motorists' insurers, but the lawsuit proceeded against First Student and the bus driver (a First Student employee).

First Student is owned by FirstGroup, a Delaware-incorporated transportation company headquartered in Ohio. Through subsidiaries like First Student, FirstGroup operates buses in forty-nine states. To insure the bus at issue in this case, FirstGroup purchased a $5 million primary business

automotive policy from National Union ("the Policy"). FirstGroup used a New York-based insurance broker. The Policy was a fleet policy, meaning it covered vehicles in multiple states and included state-specific coverage provisions. In a coverage selection form submitted to National Union, FirstGroup expressly declined underinsured motorist coverage for its Rhode Island buses.

On September 18, 2020, Briere submitted a claim to National Union, seeking underinsured motorist benefits under the Policy. In her demand letter, Briere wrote that -- notwithstanding FirstGroup's rejection of underinsured motorist coverage -- such coverage was required under § 27-7-2.1(a). That provision states in pertinent part:

> No policy insuring against loss resulting from liability imposed by law for . . . bodily injury . . . suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided in or supplemental to the policy . . . in no instance less than the limits set forth in § 31-47-2(13)(i)(A) . . . for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . . The named insured shall have the option of selecting a limit in writing less than the bodily injury liability coverage, but in no event less than the limits set forth in § 31-47-2(13)(i)(A), unless the named insured is purchasing only the minimum coverage required by compulsory insurance

- 4 -

provisions of the general laws, in which case
the limit can be reduced to zero . . . .[1]

(emphasis added).

National Union responded to Briere with a denial letter, which stated only that FirstGroup had "elected to reject, as it [was] permitted to do, Rhode Island [underinsured] coverage." National Union appended to the letter a copy of FirstGroup's coverage selection form, on which the company had ticked a box declining underinsured motorist coverage.

**B.**

In October 2020, Briere sued National Union in federal district court. First Student intervened on National Union's behalf, so we refer to the two entities collectively as "Defendants."[2] The suit alleged breach of contract and insurer bad faith, and also sought a declaratory judgment that the Policy must -- pursuant to § 27-7-2.1(a) -- provide underinsured motorist coverage.

Briere moved for summary judgment. In the section of her motion detailing the applicable law, she argued that when an

---

[1] "Uninsured" in this provision also means "underinsured." See R.I. Gen. Laws § 27-7-2.1(g).

[2] First Student intervened to defend National Union because the Policy is a "fronting policy." This means that the Policy's deductible is equal to its policy limit, so First Student is ultimately responsible for paying any benefits to which Briere is entitled under the Policy.

insurer denies coverage, it must be "held to the reasons given to its insured in a denial letter and [is] barred from . . . arguing for any grounds that do not appear in the [d]enial [l]etter." Briere then argued against National Union's only stated basis for denying underinsured coverage: that FirstGroup had elected to reject such coverage.

Defendants filed cross-motions for summary judgment that also responded to Briere's initial motion. In those motions, Defendants argued -- for the first time -- that § 27-7-2.1(a) did not apply because the Policy had not been "delivered or issued for delivery" in Rhode Island. Briere replied as follows:

> Plaintiffs previously explained that the insurance company is "held to the reasons given to its insured in a denial letter and [is] barred from introducing into evidence or arguing for any grounds that do not appear in the [d]enial [l]etter." See Plaintiffs' Memorandum in Support of Motion for Entry of Summary Judgment on Count I (Document 50) at 7 (citing Skaling v. Aetna Ins. Co., 799 A.2d 997 (R.I. 2002); Optical Works and Logistics, LLC v. Sentinel Ins. Co., Ltd., 525 F. Supp. 3d 295, 301-02 (D.R.I. 2021)). In the denial letter[,] National Union denied the claim for the sole reason that [FirstGroup] had "rejected" [underinsured motorist] coverage. The denial letter did not posit that coverage was unavailable because the policy had not been initially "delivered" to Rhode Island. This "delivery" argument was first raised by the Defendants' attorneys in their summary judgment memoranda. Because it was not one of the reasons cited in the denial letter[,] [Defendants] should be barred from making this argument to the Court.

The district court granted summary judgment to Defendants on the breach-of-contract and declaratory judgment claims. Briere v. Nat'l Union Fire Ins. Co. of Pittsburgh, 678 F. Supp. 3d 302, 312 (D.R.I. 2023). The court agreed that § 27-7-2.1(a) did not apply to the Policy, because the Policy had not been "delivered or issued for delivery in Rhode Island." Id. at 309. Rather, the Policy had been issued by a New York-based broker and delivered to FirstGroup's headquarters in Ohio. The court therefore held that it fell outside the scope of § 27-7-2.1(a). Id. at 308-09. In so holding, the court did not address Briere's contention that National Union had waived reliance on the delivery requirement by failing to mention it in the denial letter. The court later granted summary judgment to Defendants on the bad-faith claim, too, finding that "[b]ecause summary judgment issued on the breach of contract claim . . . the bad-faith claim must fall with it."

Briere timely appealed.

**II.**

We need not address the district court's interpretation of § 27-7-2.1(a). Instead, we vacate the grant of summary judgment to Defendants for a more fundamental reason: In denying coverage prior to suit, National Union never notified Briere that it was disclaiming coverage based on its interpretation of

§ 27-7-2.1(a)'s delivery requirement. The company therefore waived this defense. Our reasoning follows.

## A.

Rhode Island's highest court has held that "[i]nsurers doing business in Rhode Island have an implied obligation to promptly and fully respond to their insured." Skaling v. Aetna Ins. Co., 799 A.2d 997, 1010 (R.I. 2002). And if the response is a denial, it must be specific enough to "give [the] plaintiff[] notice of [the insurer's] intent to raise" a given coverage defense. Rueschemeyer v. Liberty Mut. Ins. Co., 673 A.2d 448, 451 (R.I. 1996). The existence of that obligation raises the following question: What happens when an insurer's response to its insured omits a possible ground for denying coverage, and the insurer later relies on that ground to defend the denial?

In Skaling, the Rhode Island Supreme Court answered that question, albeit in the context of considering what is often called a bad-faith claim. There, the insurer allegedly denied coverage despite knowing (or recklessly disregarding) that it "lack[ed] . . . a reasonable basis for denying the claim." Id. at 1004 (quoting Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (R.I. 1980)). The Skaling court ruled that, when defending against the bad-faith claim, the insurer could not rely on "extraneous facts or arguments that it did not communicate to the insured when it refused payment." Id. at 1011. So, if a denial letter does not

- 8 -

sufficiently raise a defense to a bad-faith claim, then that defense is waived. See Skaling, 799 A.2d at 1011; cf. Rueschemeyer, 673 A.2d at 451 (holding that an insurer did not waive a claim defense, because it sufficiently explained that defense in its denial letter).

Briere has brought a bad-faith claim. But she has also brought a breach-of-contract claim, as well as a related claim for declaratory judgment. So, we must determine if the rule from Skaling -- which limits an insurer in a bad-faith action to the defenses enumerated in its coverage denial letter -- also applies to a breach-of-contract action. We find that it does.

A successful bad-faith claim is like second base -- you can only get there if you reach first base by prevailing on the underlying breach-of-contract claim. Zarrella v. Minn. Mut. Life Ins. Co., 824 A.2d 1249, 1261 (R.I. 2003) ("[A] plaintiff first must show that he or she is entitled to recover on the contract before he or she can prove that the insurer dealt with him or her in bad faith."); Skaling, 799 A.2d at 1004 ("[N]o action in bad faith can lie unless and until an insured has proven a breach of the insurance contract."). If an insurer could rely on a belatedly raised defense to defeat a breach-of-contract claim, then the corresponding bad-faith claim would never come into play. This would effectively render Skaling a dead letter.

Perceiving no mandate to wipe Skaling off the books, we find that Skaling's "explain-or-waive" rule applies to litigation of claims for both breach of contract and insurer bad faith. Our holding comports with the generally accepted rule that "once an insurance company has denied coverage to its insured and stated its defenses, the insurer has waived or is estopped from raising new defenses." See 46 C.J.S. Insurance § 1196 (2024) (collecting cases). We turn our attention, then, to determining whether National Union -- in denying coverage -- adequately notified Briere of its proposed delivery requirement defense.

## B.

National Union's pre-suit denial letter to Briere was, to a significant degree, conclusory. It stated one fact: that FirstGroup had rejected underinsured coverage. And it stated one legal conclusion: that FirstGroup was permitted to reject such coverage. But it did not even hint at why FirstGroup was so permitted. Nor did it cite any facts from which one could infer the source of such permission.

National Union fairly responds that its denial letter must be read alongside Briere's initial demand letter. The demand letter quoted § 27-7-2.1(a) extensively, claiming that this provision required the Policy to include underinsured coverage. So, one could charitably read National Union's response as implying that § 27-7-2.1(a) "permitted" FirstGroup to reject underinsured

- 10 -

coverage. But even that generous reading of the denial letter leaves the reader guessing as to why § 27-7-2.1(a) "permitted" the coverage rejection. Was National Union claiming that the bus was not registered or principally garaged in Rhode Island? Was National Union asserting (as it is now) that the Policy was not delivered or issued for delivery in Rhode Island? Was National Union relying on the statute's exemption for policies offering minimum coverage?

In fact, the only explanation that National Union could be read to have given in its denial letter for why FirstGroup was "permitted" to decline underinsured motorist coverage is the minimum coverage exemption in § 27-7-2.1(a). Recall that National Union appended FirstGroup's coverage selection form to the denial letter. That form stated that underinsured motorist coverage "may be rejected [in Rhode Island] only if minimum bodily injury liability limits . . . are selected in [the Policy]." This disclaimer stemmed from § 27-7-2.1(a)'s statement that a policy may exclude underinsured motorist coverage if it provides only "the minimum coverage required by compulsory insurance provisions of the general laws." R.I. Gen. Laws § 27-7-2.1(a). By appending the coverage selection form, National Union appeared to be implying -- incorrectly[3] -- that the Policy was exempt from § 27-7-2.1(a)

---

[3] The Policy does not provide merely the "minimum coverage" required by Rhode Island law. The Policy has a limit of

- 11 -

because FirstGroup had purchased the minimum coverage required under Rhode Island law, but certainly not because the Policy (unbeknownst to Briere) was not "delivered or issued for delivery in Rhode Island."

Thus, even giving National Union the benefit of plausible inferences drawn from the language and context of its denial, National Union still never sufficiently explained that it was denying coverage based on § 27-7-2.1(a)'s delivery requirement. Defendants could not, therefore, rely on the delivery requirement to win summary judgment on Briere's bad-faith, breach-of-contract, or declaratory judgment claims. See Skaling, 799 A.2d at 1011.

## C.

National Union also argues that any waiver of its delivery requirement argument is irrelevant, because "waiver or estoppel based on the conduct of an insurer cannot create coverage where none exists." To support this contention, National Union points to a statement by the Rhode Island Supreme Court that "the doctrine of estoppel cannot be used to enlarge coverage beyond that which is set out in the policy." Gen. Accident Ins. Co. of Am. v. Am. Nat'l Fireproofing, Inc., 716 A.2d 751, 755 (R.I. 1998).

---

$5 million, and the applicable minimum coverage requirement under Rhode Island law is $25,000 per person and $50,000 per accident. See R.I. Gen. Laws § 31-47-2(13)(i)(A).

- 12 -

We decline to read this statement from <u>General Accident</u> about estoppel to negate the principle later articulated in <u>Skaling</u> -- consistent with prevailing industry practices and norms -- that an insurer waives a defense to coverage that relies on facts or arguments belatedly offered in support of its denial of coverage. <u>See</u>, <u>e.g.</u>, Restatement of the Law of Liability Insurance § 15(3) ("Notice to the insured of a ground for contesting coverage must include a written explanation of the ground, including the specific insurance policy terms and facts upon which the potential ground for contesting coverage is based[.]"); <u>id.</u> at § 15, cmt. a ("[T]he rule is now so well established that an insurer that does not raise a ground for contesting coverage should be understood to have waived its right to contest coverage in nearly all cases."). National Union's reading of <u>General Accident</u> would seemingly allow insurers to violate <u>Skaling</u>'s waiver rule with impunity, safe in the knowledge that a waived defense could nevertheless spare them from ultimately providing coverage.  Yet <u>Skaling</u> was decided four years after <u>General Accident</u>, and it never once mentioned that earlier decision.  Put simply, <u>General Accident</u> cannot reasonably be read in a way that effectively overrules <u>Skaling</u>.[4]

---

[4] Moreover, <u>General Accident</u> relied on <u>Martinelli</u> v. <u>Travelers Insurance Co.</u>, 687 A.2d 443, 447 (R.I. 1996), which limited its estoppel holding to "the circumstances of [that] case."

**D.**

Finally, National Union advances an alternative argument for affirming the grant of summary judgment. According to the company, Briere never proved that the two motorists who collided with the First Student bus were underinsured. Therefore, National Union argues, Briere's claims cannot survive summary judgment. In reply, Briere notes that her demand letter contained damage estimates that exceeded the other drivers' policy limits, and that National Union never disputed this estimate with any evidence of its own.[5]

The district court never reached this issue, which may well turn on a yet-to-be-undertaken review of the summary judgment record. We therefore think it best to let the district court consider this issue in the first instance.

**III.**

For the foregoing reasons, we vacate the district court's grant of summary judgment to Defendants as to all three claims, and remand for further proceedings consistent with this opinion. The parties shall bear their own costs.

---

[5] Briere also argues that National Union waived the argument that her damages were lower than the other motorists' liability coverage, because the company never raised the argument before moving for summary judgment. Briere, though, never meaningfully argued below that this argument was waived. We therefore leave it to the district court to decide who can argue what now with respect to National Union's damages argument.

- 14 -

**-Concurring Opinion Follows-**

**BARRON, Chief Judge, concurring**.  The majority relies on Skaling v. Aetna Ins. Co., 799 A.2d 997 (R.I. 2002), as the source of the waiver rule that it deems dispositive of the plaintiff's breach-of-contract claim.  But, because I understand Skaling to address waiver only as to a claim alleging a bad-faith denial of coverage, I write separately to explain why I nonetheless concur.

The majority concludes that a bad-faith claim is like "second base" in that it requires the underlying claim for coverage to be valid.  The majority then goes on to conclude that because, as Skaling holds, bad-faith claims are subject to a waiver rule, coverage claims are subject to that rule, too.

But, under Rhode Island law, a bad-faith claim is an "independent tort claim," Bibeault v. Hanover Ins. Co., 417 A.2d 313, 319 (R.I. 1980).  And, in principle, I could see how a bad-faith denial of coverage claim could give rise to tort liability regardless of whether the denial itself was wrongful. One need only posit a plainly bad-faith denial of a timely claim on grounds of untimeliness, where the insurer then shifts course after much time and expense on the part of the insured to identify a less-than-obvious but still-correct ground for denying coverage.

True, as the majority notes, Zarrella v. Minn. Mut. Life Ins. Co., 824 A.2d 1249, 1261 (R.I. 2003), and Skaling, 799 A.2d at 1004, say that a successful breach-of-contract claim is a necessary predicate for a bad-faith claim.  But those cases

involved situations where the same ground for denial was at issue in both the bad-faith claim and the breach-of-contract claim. Thus, I am hesitant to read them to be saying more than that a ground for denial that is itself correct cannot serve as the predicate for a bad-faith claim. And so, I am hesitant to conclude that Skaling itself demonstrates that the waiver rule it recognized extends to the context at issue here.

Nonetheless, Skaling is entirely consistent with the established background rule of insurance law that "once an insurance company has denied coverage to its insured and stated its defenses, the insurer has waived or is estopped from raising new defenses." See 46 C.J.S. Insurance § 1196 (2024). I also see nothing in Rhode Island law that suggests Rhode Island does not follow that rule, and National Union has not pointed to cases that suggest Rhode Island is an outlier. Indeed, in Rueschemeyer v. Liberty Mut. Ins. Co., 673 A.2d 448, 451 (R.I. 1996), which was decided six years before Skaling, the Rhode Island Supreme Court extensively explained why the record showed that an insurer's denial letter had sufficiently invoked a particular coverage exclusion to avoid waiver. Id. If it were impossible to waive a legal basis for a coverage denial, then the Rueschemeyer court's entire analysis would have been unnecessary. Thus, I come to the same conclusion as the majority, albeit by a different route.