Steven M. McGUIRL

v.

ANJOU INTERNATIONAL CO., et al.

No. 96–375–M.P.

Supreme Court of Rhode Island.

May 13, 1998.

Gregory L. Boyer, Providence, for Plaintiff.

Christine D'Orsi, Earl Metcalf, Howard L. Feldman, Providence, Joseph C. Manzi; Joseph Tanski, Boston, MA, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

■ In this petition for certiorari this Court is called upon to determine whether the Rhode Island Insurers' Insolvency Fund (the fund) may be compelled to reimburse another insurer for payments made by that insurer in satisfaction of claims for which the fund was subsequently declared to be responsible. Specifically the fund seeks review of a final decree of the Workers' Compensation Court Appellate Division (Appellate Division) in which the court ordered the fund to reimburse Aetna Casualty & Surety Company (Aetna) for the benefits it paid to the plaintiff, Steven M. McGuirl (McGuirl). For the reasons set forth below, we hold that the fund is not responsible for reimbursement and thereby quash the final decree of the Appellate Division. The pertinent facts and travel of the case are as follows.

This dispute involves two separate petitions for workers' compensation benefits filed by McGuirl as a result of an injury he sustained while employed by Anjou International Co. (Anjou). Although the two petitions concerned the same partial incapacity sustained on March 12, 1991, each was filed under a different theory of recovery. The first petition alleged an independent work-related injury sustained on March 12, 1991, and the second petition alleged a recurrence of an injury McGuirl sustained on September 18, 1990.

The parties have stipulated that American Universal Insurance Company (American Universal) was Anjou's insurer from a period prior to September 18, 1990, through March 8, 1991, and that Aetna provided workers' compensation insurance to Anjou beginning on March 10, 1991. American Universal was declared insolvent by the Rhode Island Superior Court on January 8, 1991, at which point the fund became obligated pursuant to the Rhode Island Insurers' Insolvency Fund Act (Fund Act), G.L.1956 § 27–34–8, to pay statutorily defined claims occurring within the period of coverage of the policies issued by American. Accordingly with respect to these petitions the fund would be responsible if McGuirl's injury was found to be a recurrence of his original work-related injury of September 18, 1990, whereas Aetna would be responsible for payment of benefits if the injury was determined to be the result of an independent work-related injury sustained on March 12, 1991.

McGuirl's two petitions were consolidated for the purposes of trial.[1] At a pretrial conference conducted pursuant to G.L.1956 § 28–35–20, the trial judge initially determined that McGuirl had suffered an independent work-related injury rather than a recurrence of the September 18, 1990 injury and ordered the employer/insurance carrier, in this case Aetna, to pay benefits to McGuirl pending a trial on the merits. After the trial, however, as is sometimes the case, the trial judge reversed his pretrial order and found that McGuirl had "failed to demonstrate * * * that he suffered a work-related injury on March 12, 1991 which injury arose out of or in the course of his employment" and instead found that McGuirl had "proven

---

1. McGuirl had filed other various petitions that were heard simultaneously with these two petitions. As they are not germane to the instant petition, they will not be discussed.

* * * that he suffered ·a return of partial incapacity on March 12, 1991, as a result of his work-related injury of September 18, 1990." The trial judge thereupon ordered the insurance carrier for the employer on the day in question, the fund, to assume responsibility for payment of McGuirl's workers' compensation benefits and to reimburse Aetna the amounts it had paid pursuant to the pretrial order.

In response to these orders the fund filed a motion to reconsider in which it "raise[d] certain jurisdictional and also legal issues as to the authority of the court to order reimbursement [by the fund] to another carrier." The trial judge declined to reach the issues, however, and instead stayed enforcement of that portion of the decree pending the fund's anticipated appeal.[2]

On appeal to the Appellate Division, the fund argued that the court lacked jurisdiction to interpret and apply the Fund Act or to fashion an· equitable reimbursement plan for the improperly paid compensation benefits. Specifically the fund argued that the trial judge had misconstrued the provisions of the Fund Act when it ordered reimbursement to Aetna because payment by the fund to another carrier is not a covered claim as defined by the Fund Act. The fund also alleged the claim for reimbursement did not arise within sixty-days of the insurer's insolvency as mandated by § 27–34–8(a)(1) and was therefore time-barred.

The Appellate Division acknowledged, and we agree, that the trial judge was confronted with a complicated reimbursement issue. The court conducted a careful review of the relevant portions of both the Workers' Compensation Act and the Fund Act and concluded that it had the requisite jurisdiction to adjudicate this controversy, notwithstanding the participation of the fund. · The Appellate

Division also determined that the claim did fall within the definition of covered claim as defined by § 27–34–5(8). The court held that contrary to the fund's assertion, the claim did not constitute a subrogation, which is proscribed by subsection (8)(ii)(C) of § 27–34–5, and noted that Aetna never petitioned the court for subrogation of monies paid to the employee. Rather the court found that it was the employee who filed the petitions for compensation for a work-related injury.

Lastly the Appellate Division rejected the fund's assertion that the claim did not arise within sixty-days of the insolvency of the insurer and determined that the claim existed prior to the determination of the insolvency. The court reasoned that because American Universal had accepted liability for the work-related injury in a memorandum of agreement executed on November 16, 1990, and because the claim relates back to the date of the original injury, its liability arose prior to its insolvency and the fund was now responsible. Accordingly the Appellate Division found that the reimbursement constituted a legitimate covered claim under the Fund Act and ordered the fund to reimburse Aetna for the monies it had paid to McGuirl. The fund then petitioned this Court for review, which we granted.

In its petition for certiorari the fund asserts arguments similar to those presented to and ultimately rejected by the Appellate Division. Specifically the fund argues that (1) reimbursement to Aetna is not a covered claim as defined by the Fund Act, (2) Aetna is required first to seek reimbursement from the Workers' Compensation Administrative Fund before seeking reimbursement from the fund, and (3) the order contravenes the Fund Act because the claim did not arise within sixty-days after the determination of American Universal's insolvency.[3] After a

---

**2.** We note that the Appellate Division correctly observed that the trial court had no authority to issue a stay of any portion of its decree and ordered that portion of the decree to be stricken.

**3.** Originally, the fund had also argued that the Workers' Compensation Court did not have the authority to exercise jurisdiction over the fund. In the interim, however, this Court issued an opinion in the case *Callaghan v. Rhode Island Occupational Information Coordinating Commit-*

*tee/Industry Educational Council of Labor*, 704 A.2d 740 (R.I.1997), where this Court rejected a similar argument advanced by the fund and held that the Workers' Compensation Court does have the authority to interpret and apply the Fund Act to the extent necessary to determine the fund's obligations under the Workers' Compensation Act. We stated that the "constrained view of the jurisdiction of the WCC * * * contravenes the well-settled principle that the Workers' Compen-

review of the record and the relevant statutes we respectfully disagree with the Appellate Division and conclude that pursuant to § 27–34–5(8)(ii)(C), payment to Aetna does not constitute payment for a covered claim.

 The scope of our review of a decree of the Appellate Division is restricted to a determination of whether that tribunal erred in deciding questions of law. *See Wehr, Inc. v. Truex,* 700 A.2d 1085, 1087 (R.I.1997); *Boucher v. McGovern,* 639 A.2d 1369, 1373 (R.I.1994). We reverse only when we find that the lower court committed an error of law. *See Boucher,* 639 A.2d at 1373.

The Fund Act was established by the Legislature "to provide a mechanism for the payment of covered claims under certain insurance policies" in order to protect both claimants and policyholders from economic harm when an insurer becomes insolvent. Section 27–34–2. *See also Bassi v. Rhode Island Insurers' Insolvency Fund,* 661 A.2d 77, 79 (R.I.1995). Section 27–34–8(a)(1) of the Fund Act specifically provides that the fund is obligated to pay covered claims as that term is defined in § 27–34–5(8), which provides in pertinent part:

" 'Covered claim' means an unpaid claim * * * which arises out of and is within the coverage and subject to the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if the insurer becomes an insolvent insurer on or after July 1, 1988 and:
* * *

(ii) * * * 'Covered claim' shall not include any amount:
* * *

(C) Due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise; provided, that a claim for any such amount, asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool, or underwriting association, would be a 'covered claim,' may be filed

directly with the receiver of the insolvent insurer, but in no event may any [of] the claim be asserted against the insured of the insurer."

In applying provisions of the Fund Act, this Court has previously stated that the plain and unambiguous language of the statute unequivocally provides protection but only to the extent the claim is a covered claim. *See Whitehouse v. Rumford Property and Liability Insurance Co.,* 658 A.2d 506, 508 (R.I.1995); *see also Bassi,* 661 A.2d at 79. Because any payment due any insurer for "subrogation recoveries or otherwise" is specifically excluded from the definition of a covered claim and because it is undisputed that the reimbursement contemplated in the subject order is not for subrogation recovery, we are called upon to determine the meaning of the term "or otherwise" in the context of this case.

 It is well settled that in construing an act of the Legislature, we have as our responsibility to effectuate the intent of the Legislature. *See Wayne Distributing Co. v. Rhode Island Commission For Human Rights,* 673 A.2d 457, 460 (R.I.1996). " 'When the language of a statute is unambiguous and expresses a clear and sensible meaning, there is no room for statutory construction or extension, and we must give the words of the statute their plain and obvious meaning. * * * Such meaning is presumed to be the one intended by the Legislature, and the statute must be applied literally.' " *Id.*

Although we have not had the occasion to interpret the exclusion by the Legislature of any amount due an insurer "as subrogation recoveries or otherwise" as contained in § 27–34–5(8)(ii)(C), we are of the opinion that the language employed in this portion of the statute is clear and unambiguous and thus not in need of interpretation beyond its plain and ordinary meaning. Webster's Ninth New Collegiate Dictionary 836 (1983) defines "otherwise" as "something or anything else" and "in a different manner or in a different way." Applying these definitions in the con-

---

sation Act is to be liberally construed to effectuate its purpose." *Id.* at 744. Accordingly the

fund conceded this portion of its petition at oral argument.

text of § 27–34–5(8)(ii)(C), it becomes clear that the Legislature intended to exclude all payments to other insurance carriers. Although we are cognizant of the concern voiced by the trial court with respect to the potential "windfall" to the insolvent insurer and thus the fund were reimbursement excused, we believe the specific language of the statute must necessarily overcome any equitable policies or procedures adopted by the Workers' Compensation Court in aid of its jurisdiction.

We find additional support for our conclusion in the recent case *Hunnihan v. Mattatuck Manufacturing Co.*, 243 Conn. 438, 705 A.2d 1012 (1997). In *Hunnihan*, the Connecticut Supreme Court had occasion to address the precise issue presently before us, that being whether that state's insolvency-protection mechanism was obligated to reimburse an insurer for its proportionate share of an award made to an injured worker. In that case the plaintiff-employee had filed a claim for workers' compensation benefits with his employer after having sustained a work-related repetitive-stress injury. *Id.* 705 A.2d at 1014. The injury complained of was sustained over the course of a seventeen-year period, during which time it was agreed that the employer was insured for workers' compensation liability by four different insurance carriers. *Id.*

Pursuant to Connecticut General Statutes, in cases in which there may be more than one employer or insurer potentially liable for a work-related injury, the last employer or insurer of the injured employee, in this case Fireman's Fund Insurance Company (Fireman's Fund), assumes responsibility for all compensation and medical payments during the pendency of the trial. *See* Conn.Gen. Stat. Ann. § 31–299b (1958). After an adjudication on the merits wherein it is determined the worker is entitled to benefits, the commissioner may then apportion the liability among the employers or insurers and order reimbursement to the insurer who was last in line. *Id.*

In *Hunnihan* Fireman's Fund paid the compensation pending further resolution of the apportionment of liability. Fireman's Fund subsequently sought reimbursement from the employer's other insurers for their proportionate share of the benefits Fireman's Fund had paid to the employee. *Hunnihan*, 705 A.2d at 1014. Two of the insurers agreed to pay. The third insurer, American Mutual Insurance Company (American Mutual), however, had previously been declared insolvent and the Connecticut Insurance Guaranty Association (Guaranty Association) had become obligated to pay American Mutual's covered claims. *Id.* As a result the commissioner ordered the Guaranty Association to reimburse Fireman's Fund for American Mutual's proportionate share of the benefits. *Id.* The Guaranty Association objected to the order, however, on the ground that reimbursement to Fireman's Fund did not constitute a covered claim under the guaranty act and appealed the decision to the compensation review board. The definition of the term covered claim in Conn.Gen.Stat.Ann. § 38a–838(6) is almost identical to that of § 27–34–5(8)(ii)(C) and provides in pertinent part:

> " 'Covered claim' means an unpaid claim * * * provided the term 'covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise."

The review board affirmed the commissioner, and the Guaranty Association appealed this decision to the Connecticut Supreme Court. *Hunnihan*, 705 A.2d at 1014. The court reversed the decision and vacated the reimbursement order, holding that the phrase "as subrogation recoveries or otherwise" specifically excluded payments to any insurer for reimbursement, notwithstanding the Connecticut Workers' Compensation Act. *Id.* at 1018. In so doing, the *Hunnihan* court stated:

> "To begin with, we note that the term 'otherwise' is defined by Black's Law Dictionary (6th Ed.1990) as meaning '[i]n a different manner; in another way, or in other ways.' Substituting this definition for the term 'otherwise' in the statute demonstrates that not only are subrogation recoveries by an insurer excluded but so are recoveries obtained in a different manner or in other ways. This result com-

ports with the everyday understanding of the phrase 'or otherwise,' and with a plain reading of § 38a–838(6). Read this way, the language is very broad, and encompasses all amounts claimed by insurers as reimbursement. * * * [W]e conclude that the language provides a strong indication that under the guaranty act, all claims by insurers are excluded from the definition of a covered claim." *Id.* We find this reasoning to be persuasive.

■ We therefore conclude that a plain reading of § 27–34–5(8)(ii)(C) specifically excludes from the definition of covered claim all payments made or ordered to be made to insurers for reimbursement. We deem this language to be unambiguous and clearly indicative of the intent of the Legislature in limiting the fund's statutory authority to the paying of only covered claims, thus providing a limited form of protection to claimants and policyholders. Accordingly we are of the opinion that payment of a covered claim does not include any payment to Aetna or any insurer for reimbursement in circumstances in which it has been determined pursuant to § 28–35–20(f) that the employee, in this case McGuirl, was not entitled to the relief sought in the petition.

Because we find the fund's first argument to be a sufficient basis upon which to grant its petition, we need not reach the merits of its other two arguments. In reaching this conclusion we note that the Workers' Compensation Administrative Fund may be available to compensate Aetna for its losses. As we decline to address that portion of the fund's argument, we leave that determination to the Workers' Compensation Court.

Accordingly we grant the petition for certiorari and quash the decree of the Appellate Division ordering the fund to pay reimbursement to Aetna. The papers in this case are remanded to the Workers' Compensation Court with our decision endorsed thereon.

BOURCIER, J., did not participate.