DECISION
Before this Court is a motion for declaratory judgment by the Plaintiff in intervention, Rhode Island Insurers' Insolvency Fund, asking this Court to declare 1) that defendant, Tilcon Gammino, Inc. was not an insured under any American Universal Insurance Company policy 2) that defendant, Tilcon Gammino, Inc. did not have a "covered claim" against the Rhode Island Insurers' Insolvency Fund, as that term is defined in Chapter 34 of Title 27 of the General Laws of Rhode Island; and 3) that the Fund is not obligated to pay any amount to Tilcon Gammino, Inc. or to Able Contractors, Inc. on account of Tilcon Gammino Inc.'s cross-claim. Jurisdiction is pursuant to General Laws of Rhode Island 1956 § 9-30-1.
 Facts and Travel
The parties have stipulated to an agreed statement of facts. The facts, as they pertain to the present motion for declaratory judgment, are as follows. On June 4, 1985, plaintiff, Joseph J. Fratus was inspecting road repairs being performed by Able Contractors, Inc., formally known as Able Bituminous Contractors ("Able"), on Interstate 295 in Cranston, Rhode Island in the course of his employment as a Rhode Island Department of Transportation employee. He was struck and injured by a U-Haul vehicle while conducting his inspection. Thereafter, the Fratus plaintiffs commenced this suit against defendants alleging, among other things, that the defendant contractor, Tilcon Gammino, Inc. ("Tilcon"), and defendant subcontractor, Able, negligently failed to maintain cones and flashing sign boards and otherwise failed to exercise due care to protect Mr. Fratus.[1] This lawsuit was subsequently settled. The Rhode Island Insurers' Insolvency Fund ("the Fund") now moves this Court for declaratory judgment asking this Court to declare the rights of the parties with regard to the cross-claim of Tilcon Gammino, Inc. for contribution or indemnification from Able. A further discussion of the relevant facts and travel of the underlying lawsuit is required in order to resolve the present motion.
On or about July 20, 1989, Tilcon filed a claim for declaratory judgment in the Providence County Superior Court (Civil Action 89-3933), seeking a declaration that Able and/or Able's liability insurance carrier, American Universal Insurance Company ("American Universal"), was required to defend and indemnify Tilcon with respect to the claims asserted in the Fratus accident. Able was insured by a special multi-peril policy issued by American Universal with policy limits of $500,000 per occurrence and $500,000 aggregate. According to the agreed statement of facts, the policy provided coverage to Able for, among other things, the cross-claims asserted against Able by Tilcon. The parties differ as to whether Tilcon was an additional insured under the policy Able had with American Universal. Pursuant to the subcontract between Tilcon and Able, Able was obligated under the terms of the contract to list Tilcon as an additional insured under Able's liability insurance policy and was obligated to acquire a Certificate of Insurance in Tilcon's name. While a Certificate of Insurance was issued in Tilcon's name, the policy makes no reference to Tilcon as an additional insured. (See Agreed Statement of Facts, p. 3, ¶ ¶ 9-12; p. 6, ¶ 29; and Agreed Statement of Facts Exhibits "B" and "C".)
Nonetheless, on or about August 10, 1989, American Universal agreed to defend and indemnify Tilcon in the Fratus action as an additional insured under the Able policy. As a result, Tilcon dismissed its declaratory judgment action against Able and American Universal. Subsequently, on or about January 8, 1991, a court of competent jurisdiction in Rhode Island determined American Universal to be insolvent. The Rhode Island Insurers' Insolvency Fund ("the Fund") stepped into the shoes of the insolvent insurer (American Universal) and became responsible for certain "covered claims," as defined in Chapter 34 of the Rhode Island General Laws. The Fund's Senior Claims Examiner, Mr. Daniel F. Healy, informed Tilcon in a letter dated March 12, 1991, that due to the insolvency of American Universal, the Fund would no longer honor American Universal's arrangement 3 to defend Tilcon in the Fratus action, because Tilcon "had coverage of its own for the above referenced accident." This other coverage to which Mr. Healy referred was a policy issued to Tilcon by Commercial Union Insurance ("CU"), which covered the claims asserted against Tilcon by the Fratus Plaintiffs. The policy limits of the CU policy were twenty million British pounds aggregate. (See Agreed Statement of Facts, p. 4, ¶ ¶ 15-19; and Agreed Statement of Facts Exhibit "E.")
On or about March 11, 1992, Tilcon commenced its cross-claim against Able for contribution and indemnification. At that time, Tilcon asserted that there was no other source of recovery for Tilcon other than through the Fund. Since the commencement of the cross-claim, Tilcon conceded that, in fact, there was insurance coverage with CU for plaintiffs' losses.
Prior to the resolution of the cross-claim, Tilcon and its liability carrier, CU, agreed to settle the claims asserted by the Fratus Plaintiffs in the Fratus action pursuant to the CU policy, and entered into a Settlement Agreement and General Release. Tilcon, CU, and Able agreed that the amount paid pursuant to the Settlement Agreement was fair and reasonable. Pursuant to the Settlement Agreement, the Fratus Plaintiffs agreed to accept less than the policy limits of the CU Policy, and the Fratus Plaintiffs agreed to release Tilcon and Able from any further claims relating to the accident. Neither Tilcon nor Able admitted any liability on the plaintiff's claim under the Settlement Agreement. Likewise, neither Tilcon nor Able admitted any liability for negligence in connection with the cross-claim. On or about October 29, 1993, the Providence County Superior Court entered the Dismissal Stipulation dismissing all claims brought by the Fratus Plaintiffs against Tilcon and Able. According to the parties, CU has made and continues to make all payments provided for in the Settlement Agreement to the Fratus Plaintiffs. By virtue of making such payments pursuant to the Settlement Agreement, CU is entitled to receive any amounts recovered in Tilcon's cross-claim against Able with the exception of any applicable deductible amount. (See Agreed Statement of Facts, pp. 5-6, para. 20-25)
In its Memorandum, Tilcon argues it is entitled to receive from Able either contribution under the Contribution Among Joint Tortfeasors Act, or indemnification pursuant to the subcontract toward the $1,300,000.00 settlement payment it made to Plaintiffs. Tilcon also alleges that the fund is bound by what Tilcon refers to as American Universal's "settlement agreement." Tilcon asks this Court to declare that Tilcon has a viable cross-claim and that the Fund is required to indemnify Tilcon up to its statutory limit of $300,000. Tilcon also asks that it also be awarded attorney's fees and costs incurred in its defense. Furthermore, since there is nothing in the statutory scheme which would protect Able from liability claims in excess of the protection originally purchased by Able, Tilcon argues it should also be entitled to pursue payment from Able, personally and individually, for the amount of its liability in excess of the insurance coverage provided by American Universal.
The Fund responds that it was never a named party in Tilcon's cross-claim against Able and that Tilcon has not commenced any action against the Fund or served the Fund with process. The Fund also argues that, by reason of the Act, R.I.G.L. § 27-34-5(8)(ii)(c), it has no obligation with regard to Tilcon's claim because any payment it would make would go to CU and would thus constitute a payment due an insurer, which is specifically excluded from "covered claims" in the statute. Additionally, the Fund alleges that, by reason of the Act, R.I.G.L. § 27-34-12 (a), it has no obligation on account of Tilcon's claim because any amount payable by the Fund must be reduced by the amount recovered by Tilcon from CU and because Tilcon failed to exhaust its rights against CU. The Fund seeks a declaration that Tilcon was not an insured under any American Universal policy and thus does not have a covered claim against the Fund, and that it is not obligated to pay any amount to Tilcon or to pay any amount to Able on account of Tilcon's cross-claim.
In addition to the foregoing arguments, counsel for Able argues that by reason of § 27-34-5(8)(ii)(C) of the statute, Tilcon is barred from asserting a claim for contribution or indemnification against an insured of the insolvent insurer, in this case, Able.
The parties have agreed that this Court decide the issues raised in the cross-claim and Declaratory Judgment Complaint without the parties having to file cross-motions for Summary Judgment.
 Rhode Island Insurers' Insolvency Fund
The Fund was established pursuant to the Rhode Island Insurers' Insolvency Fund Act, Chapter 34 of Title 27. It is endowed by assessments on liability insurance carriers doing business in the state of Rhode Island. Section 27-34-8(3). The insurers, in turn, charge their insureds higher premiums to cover the cost of supporting the Fund. Section 27-34-15. See, RIIIF v. Benoit, 723 A.2d 303 (R.I. 1999).
The purpose of the Fund is "to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer. . . ." § 27-34-2 (emphasis added). Specifically excluded from the definition of "covered claims" in the statute is "any amount due any . . . insurer, as subrogation recoveries or otherwise. . . ." 27-34-5(8)(ii)(C) (emphasis added). Therefore, the statute excludes from covered claims not only subrogation recoveries but also any kind of payments to insurers. In McGuirl v. Anjou International Co., 713 A.2d 194 (R.I. 1998), our Supreme Court remarked:
 "[W]e are of the opinion that the language employed in this portion of the statute is clear and unambiguous and thus not in need of interpretation beyond its plain and ordinary meaning. Webster's Ninth New Collegiate Dictionary 836 (1983) defines `otherwise' as `something or anything else' and `in a different manner or in a different way.' Applying these definitions in the context of § 27-34-5(8)(ii)(C), it becomes clear that the Legislature intended to exclude all payments to other insurance carriers." McGuirl at 197."
 "We therefore conclude that a plain reading of 27-34-5(8)(ii)(C) specifically excludes from the definition of covered claims all payments made or ordered to be made to insurers for reimbursement. We deem this language to be unambiguous and clearly indicative of the intent of the Legislature in limiting the fund's statutory authority to the paying of only covered claims, thus providing a limited form of protection to claimants and policyholders." Id. at 199.
In the present action, Tilcon's claim against Able is a thinly disguised subrogation claim.
Subrogation, as defined by Black's Law Dictionary, involves:
 "the substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. . . . Insurance companies, guarantors, and bonding companies generally have the right to step into the shoes of the party whom they compensate and sue any party whom the compensated party could have sued." Blacks Law Dictionary 1427 (6th ed. 1990)
Here, Tilcon's insurer, CU, paid Plaintiffs a sum of money which served to release Tilcon and Able from any liability to plaintiffs. Tilcon now seeks contribution and indemnification toward that settlement payment from Able, the insured of the Fund. However, Tilcon no longer has a stake in the action; its insurer does. As admitted by Tilcon, any money Tilcon recovers from Able will go to CU, the party with a remaining interest in the claim. (Agreed Statement of Facts, p. 5). Section 27-34-5(8)(ii)(C) specifically excludes from the definition of covered claims subrogation claims, as well as all payments made or ordered to be made to insurers for reimbursement. Therefore, even if this claim were not a subrogation claim, it would still be excluded from "covered claims" as a payment to an insurer. The question has been raised as to whether the Fund acted properly in its failure to defend Tilcon and participate in settlement negotiations on its behalf. However, only if it were obligated to defend and indemnify Tilcon and failed to do so, would the Fund not be allowed to avoid liability to CU by relying on § 27-34-5(8)(ii)(C). Such a result would serve to circumvent the statute, which requires the Fund to assume all the obligations of the insolvent insurer with regard to "covered claims."
 Fund's Obligation to Defend Tilcon
Under the Act, the Fund is bound to assume the obligations of an insolvent insurer, as if that insurer had not become insolvent. Section27-34-8(a)(2). "We have long held `that an insurer must act in a reasonable manner and in good faith in settling third-party claims against its insured.'" Benoit, 723 A.2d at 306 (citing Medical Malpractice Joint Underwriting Association of Rhode Island v. Rhode Island Insurers' Insolvency Fund, 703 A.2d 1097, 1101 (R.I. 1997)). The act imposes upon the Fund . . ." a duty to act in good faith regarding claims brought against policyholders". Id. at 306 (citing Medical Malpractice, 703 A.2d at 1100-01; Rumford Property and Liability Insurance Co. v. Carbone, 590 A.2d 398, 400 (R.I. 1991)). The obligation of the Fund to any claimant is statutorily capped at $300,000 per claimant for a covered claim, but apart from that limit, the fund shall "[b]e deemed the insurer to the extent of its obligation on the covered claims and to that extent shall have all of the rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." Id. at 306 (citing §§ 27-34-8(a)(1)(iii), 27-34-8(a)(2)). The act further directs the fund to "[i]nvestigate claims brought against the fund and adjust, compromise, settle, and pay covered claims to the extent of the fund's obligation." Id. at 306 (citing § 27-34-8(a)(4)).
The language in the Fund's March 12, 1991 letter to Tilcon suggests that the Fund believed it was not statutorily obligated to take on the duty that the insolvent insurer had assumed, namely, the defense and indemnification of Tilcon as an additional insured under the Able policy. In its letter, the Fund stated the following:
 "Please be advised that the Rhode Island Insurers' Insolvency Fund has taken over the handling of `covered claims' of the American Universal Insurance Company which has been declared insolvent. Prior to this insolvency, it was agreed that American Universal on behalf of Able Bituminous Contractors would take on the defense of the co-defendant, your client Tilcon Gammino. Due to the insolvency, the Rhode Island Insurers' Insolvency Fund will no longer honor this arrangement because your client has coverage of its own for the above referenced accident."
But prior to its insolvency, American Universal agreed to defend and indemnify Tilcon as an additional insured under Able's policy for the plaintiffs' claim. The Fund was statutorily required to assume the same duty of insuring Tilcon. The Fund cannot deny Tilcon its defense when it was statutorily so obligated and thereafter invoke § 27-34-5(8)(ii)(C) to avoid reimbursing the insurer of a less responsible tortfeasor (See, Medical Malpractice, 703 A.2d at 1102) unless Tilcon was required to exhaust its policy with CU under § 27-34-12(a). "Before receiving any recovery from the Fund, a claimant is required to exhaust all other available coverage under any other applicable insurance policy, governmental insurance, or guaranty program. The Fund then reduces the amount payable on a covered claim by the amount received from other sources." Kachanis v. United States of America et al., 844 F. Supp. 877, 879 (R.I. 1994) (citing § 27-34-12).
 Exhaustion Offset under § 27-34-12(a) of the Act
Section 27-34-12(a), entitled "Non-duplication of recovery", provides:
 "Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his or her right under that policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under the insurance policy." (Emphasis added.)
The first half of § 27-34-12(a) of the statute, emphasized above, pertains to the Fund's right to require exhaustion of another insurance policy prior to reimbursement. The second half of § 27-34-12 (a) pertains to the Fund's right to offset that exhausted recovery. The exhaustion clause was interpreted by the Rhode Island Supreme Court in Medical Malpractice, 703 A.2d at 1100-1102. The Rhode Island Supreme Court in Medical Malpractice was guided by a Pennsylvania case, Sands v. Pennsylvania Guaranty Association, 283 Pa. Super. 217, 423 A.2d 1224
(1980). The Pennsylvania court, interpreting a statute nearly identical to § 27-34-12, held that an insured claimant did not have an obligation to exhaust a tortfeasor's insurance coverage prior to seeking reimbursement from the Guaranty Fund because the insured claimant did not have a direct claim against the tortfeasor's insurer.
Our Supreme Court agreed that a claimant does not have a direct claim against the insurer of a tortfeasor until that claim has been reduced to judgment against the tortfeasor Medical Malpractice, 703 A.2d at 1101 (citing Cianci v. Nationwide Insurance Co., 659 A.2d 662, 666 (R.I. 1995), and Auclair v. Nationwide Mutual Insurance Co., 505 A.2d 431
(R.I. 1986)). The Rhode Island Supreme Court affirmed the lower court's reading of § 27-34-12, that while a claimant is required to exhaust his or her first-party coverage with an insurer, it is not required to exhaust the third-party claims such a claimant might have against other codefendants.
With regard to exhaustion in this case, the parties have framed the issue as whether the Fund had a right to require the plaintiffs to exhaust the CU policy of the tortfeasor, Tilcon, prior to seeking reimbursement from the Fund. The precedent is clearly established that the Fund would have no such right, as the insurer of Able, to demand that the plaintiffs exhaust Tilcon's policy with CU prior to seeking reimbursement from the Fund. A claimant has no obligation to exhaust its third party claim coverage prior to a judgment being entered. Here, however, Tilcon is an additional insured under the Able policy. The issue correctly stated in the present case is whether the Fund had the right to require
Tilcon to exhaust its policy with CU prior to seeking reimbursement from the Fund. The plaintiffs' claim was not the only covered claim presented by the facts of this case. A "covered claim," as defined under the statute, is "an unpaid claim, including one for unearned premiums, submitted by a claimant, which arises out of and is within the coverage and subject to the applicable limits of an insurance policy to which this chapter applies issued by insurer, if the insurer becomes an insolvent insurer on or after July 1, 1988. . . ." § 27-34-5(8). A "claimant" is "an insured making a first party claim or any person instituting a liability claim. . . ." § 27-34-(3). Thus, Tilcon, as the additional insured under Able's policy, had a right to indemnification from the Fund of the plaintiffs' losses which arose out of the insolvency of American Universal. Tilcon, therefore, qualifies as a claimant with a first party claim against the Fund pursuant to the statute. None of the exclusions apply to Tilcon's claim. Since Tilcon had a covered claim with the Fund, while at the same time having access to another policy (CU) for the same coverage of plaintiffs' losses, the Fund had the right to require Tilcon to first exhaust the CU policy prior to seeking reimbursement through the Fund. According to our Supreme Court, a claimant with a direct, first party claim against an insurer, has an obligation to exhaust that first party claim prior to seeking coverage from the Fund. While this construction is liberal in the sense that Tilcon asserted its right to indemnification from the Fund in the form of a cross-claim against Able instead of a first party, direct claim against the Fund prior to the settlement by CU, this construction effectuates the purpose of the statute. Such a construction acknowledges the duty of the Fund to assume the obligations of the insolvent insurer; in this case, the indemnification of Tilcon as an additional insurer. The result is the avoidance of financial loss to claimants or policyholders because of the insolvency of an insurer. The statute specifically provides for a liberal construction of the chapter so as to effect its purpose.
§ 27-34-4.
With regard to the offset language in the second half of §27-34-12(a), the Rhode Island Supreme Court in Benoit, 723 A.2d at 307, found it to be ambiguous. "We agree with the jurisdictions that have held that `the language is ambiguous if not contradictory,'" (quoting International Collection Service v. Vermont Property Casualty Insurance Guaranty Association, 150 Vt. 630, 555 A.2d 978, 980 (Vt. 1988)), "that `the interrelationship of the clauses and phrases is confusing,'" (quoting Gimmestad v. Gimmestad, 451 N.W.2d 662, 664 (Minn.Ct.App. 1990)), "and that the section is `neither a model of clarity nor an exemplar of the draftsman's craft.'" (quoting Arizona Property Casualty Insurance Guaranty Fund v. Herder, 156 Ariz. 203, 751 P.2d 519, 523 (Ariz. 1988)).
The Court reads the phrase, "any recovery under the insurance policy" in the second sentence of § 27-34-12(a) ("Any amount payable on a covered claim under this chapter shall be reduced by the amount of any recovery under this insurance policy"), to refer to the recovery made pursuant to the first sentence of the section ("Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall be required to exhaust first his or her right under that policy.") The Court held that a recovery made pursuant to the first sentence (exhaustion of another policy) must therefore be on a covered claim because the second sentence of § 27-34-12(a) clearly references the first, and the first sentence refers only to covered claims. The Court held it impossible to conclude that the second sentence allowing offset contemplated the offset of a non-covered claim. Therefore, under § 27-34-12(a), the Fund may offset only a covered claim. The initial threshold question one should ask then, when applying 27-34-12(a), is whether the claim qualifies as a covered claim. Benoit 723 A.2d at 307. This reasoning, this Court finds, is consistent with one of the purposes of the act, to avoid loss resulting from the insolvency of an insurer. Section 27-34-2.
This Court is analyzing the claim of Tilcon prior to the settlement agreement having been reached because the question arose whether the Fund acted improperly in failing to defend Tilcon in the same manner as American Universal would have had it not become insolvent. (The claim at the present juncture remains a subrogation claim or a claim for payment to an insurer, which is specifically excluded from the definition of "covered claim" under § 27-34-5(8)(ii)(C) of the statute.) This Court has determined thus far that Tilcon had a "covered claim" with the Fund within the meaning of the statute for indemnification of plaintiffs' claimed losses. (Prior to settlement, it was an "unpaid claim submitted by a claimant, which arose out of and was within the coverage and subject to the applicable limits of an insurance policy to which this chapter applies issued by an insurer who became an insolvent insurer on or after July 1, 1988". § 27-34-5(8).) But for the insolvency of American Universal, Tilcon's claim for indemnification would have been covered by Able's policy with American Universal. At the time of the insolvency, Tilcon had another policy with CU, which was applicable to this covered claim. The Fund, which stepped into the shoes of American Universal, could, pursuant to the statute, require Tilcon to exhaust its policy with CU prior to its payment of any money.
CU chose to settle with the plaintiffs for $1,300,000.00. This amount was less than its policy amount of $2 million British pounds. Since the policy was not exhausted, the Fund's obligation to pay never arose, and thus the offset provision does not apply. Accordingly, the Fund has no further obligation to Tilcon at the present time. Likewise, no excess liability exists from which the defendant, Able, could be held personally liable.
Based on the foregoing, Tilcon has no right to collect money from the Fund on behalf of CU under the statute because the statute bars payment to insurers for subrogation or otherwise. The Fund's failure to participate in settlement negotiations or to defend Tilcon did not circumvent the statute as the CU policy was required to be exhausted and setoff from any contribution from the Fund. Accordingly, the Court declares:
 1) Tilcon, an additional insured under the Able policy with American Universal, had a first party "covered claim" for defense and indemnification of plaintiffs' losses, as that term is defined in the statute, prior to the CU settlement, which resulted from American Universal's agreement to defend and indemnify it as an additional insured prior to its insolvency.
 2) Tilcon did not have any right to reimbursement by the Fund until it exhausted its other coverage with CU. As the CU settlement amount was less than the CU policy value, the policy was not exhausted. The Fund, therefore, owed no additional money to Tilcon. In addition, the claim as it presently stands no longer fits the definition of a "covered claim" because at this stage of the action, it represents nothing more than a subrogation claim which is excluded from "covered claims" under § 27-34-5(8)(ii)(C).
 3) Tilcon has no remaining right to seek contribution from Able or the Fund.
Counsel shall prepare the appropriate judgment for entry.
[1] Prior to the within action, Plaintiffs commenced suit in the United States District Court against U-Haul International, Inc. and/or U-Haul Company of Western Michigan, American Drywall Company, Inc., and Joseph T. Obert, Jr. Judgment was ultimately entered in favor of the U-Haul defendants and entered against American Drywall Company and Joseph T. Obert.