Troy, Paul E., J.
INTRODUCTION
St. Paul Fire and Marine Insurance Company (“St. Paul”) filed this action seeking a declaratory judgment concerning its obligation with respect to an automobile accident in Boston involving a rental car from Rhode Island. This matter is before the court on Plaintiff, St. Paul Fire and Marine Insurance Company’s Motion for Summary Judgment, and the Defendants’ Motion For Summary Judgment pursuant to Mass.R.Civ.P. 56. In addition, the defendants have filed a Motion to Strike Plaintiffs Argument Regarding Font Size From Opposition to Defendants’ Motion for Summary Judgment. For the reasons discussed below, the defendants’ motion to strike is DENIED. Further, St. Paul’s motion for summary judgment is ALLOWED and the defendants’ cross motion is DENIED.
BACKGROUND
The undisputed facts, as revealed by the summary judgment record, are as follows. In October of 2010, St. Paul issued a Commercial Auto Protection Policy to defendant Mercury Interactive Corporation (“Mercury”) with effective dates of coverage from October 1, 2005 through October 1, 2006 and policy limits of a million dollars (“the Policy”). Defendant Luc Clement (“Clement”) is employed by Mercury.
On July 23, 2006, Clement rented a vehicle from The Hertz Corporation (“Hertz”) at T.F. Green Airport in Providence, Rhode Island by executing a Rental Agreement. Clement executed the Rental Agreement in Rhode Island, and the rental vehicle was registered in Rhode Island. The Rental Agreement states:
If You have declined the optional Liability Insurance Supplement (LIS), Par. 10(b) of the Rental Terms will apply to this rental. Any valid collectible insurance or self-insurance that provides coverage or liability protection to You or to an Authorized Operator for any third party liability claims shall be primary and any insurance or self-insurance that provides coverage or liability protection to Hertz for any third party liability claims shall be excess.
The Rental Agreement folds out into a long strip. The above-cited statement appears on the fourth and final page, which is also the signature page. Paragraph 10(b) of the Rental Agreement Terms and Condition states:
IF YOU DO NOT PURCHASE LIABILITY INSURANCE SUPPLEMENT (LIS) (A SUMMARY OF LIS COVERAGE APPEARS BELOW) AT THE COMMENCEMENT OF THE RENTAL AND AN ACCIDENT RESULTS FROM THE USE OF THE CAR, YOUR INSURANCE AND THE INSURANCE OF THE OPERATOR OF THE CAR WILL BE PRIMARY. THIS MEANS THAT HERTZ WILL NOT GRANT ANY DEFENSE OR INDEMNITY PROTECTION UNDER THIS PARAGRAPH IF EITHER YOU OR THE OPERATOR OF THE CAR ARE COVERED BY ANY VALID AND COLLECTIBLE AUTOMOBILE LIABILITY INSURANCE, WHETHER PRIMARY, EXCESS OR CONTINGENT, WITH LIMITS AT LEAST EQUAL TO THE MINIMUM REQUIRED BY THE APPLICABLE STATE FINANCIAL RESPONSIBILITY LAW. IF NEITHER YOU NOR THE OPERATOR OF THE CAR HAVE SUCH INSURANCE, HERTZ WILL GRANT YOU AND ANY AUTHORIZED OPERATOR OF THE CAR LIMITED PROTECTION UNDER THE TERMS AND CONDITIONS STATED IN SUBPARAGRAPHS 10(a) AND 10(b).
Clement declined the Liability Insurance Supplement.
Under the Rental Agreement, the vehicle was to be returned at Logan Airport on July 23, 2006. On that date, Clement was operating the rental vehicle in the course and scope of his employment with Mercury on the exit ramp into Logan Airport. Defendant Erik Maki (“Maki”) was operating his vehicle on the same exit ramp when he collided with Clement. Maki suffered personal injuries in the accident and on July 14,2009, filed a negligence action against Clement and Hertz in Middlesex Superior Court, MICV2009-02728-F (“the Action”). A dispute arose between St. Paul and Hertz over who was to provide primary insurance coverage to Clement. Hertz denied any obligation to provide primary liability coverage. Although St. Paul believed this determination to be erroneous, it nonetheless defended Clement in the Action under the Policy. The parties in the Action reached a settlement and the case was dismissed on March 22, 2011. St. Paul paid Maki $40,000 in settlement, and incurred $18,678.47 in attorneys fees and costs in defending the Action. St. Paul also paid $1,216.45 for property damage to Maki’s vehicle.
St. Paul filed this action on November 24, 2010, seeking a declaratory judgment that the policy issued by Hertz provides primary coverage and that St. Paul is entitled to recover the attorneys fees incurred in defending Clement. The defendants filed a counterclaim seeking a declaratory judgment that St. Paul *605 provides primary coverage and Hertz provides secondary liability coverage for the accident.
Hertz has submitted the affidavit of Ada Priddy (“Priddy”), a Hertz employee who is familiar with Hertz rental contracts. Priddy avers that Hertz’s internal computer system is programmed to use 10-point font for certain portions of the rental contract. Priddy submits two screen shot printouts which show the layout, font, and positioning of various aspects of the Hertz rental contract. The first shows that “RI Disclosures” in the agreement, including the one on page four of the Rental Agreement which includes the primary liability shifting notice, are set to a font of “Medium, 10 pt.” The second printout shows that the specific text beginning “If You have declined the optional Liability . . .” is set to font: “Medium; 10 pt.”
St. Paul has submitted a printout of a Google Search result listing numerous articles discussing the conversion of computer points to millimeters. The top of the printout states: “10 PostScript points = 3.52777778 millimeters.” Finally, counsel for the defendant, Attorney Jeffrey Dolan, has submitted an affidavit in which he states that in said affidavit, he created a demonstration concerning font size by typing the capital letter X in ten-point font in the following font types: Times New Roman, Arial, Comic Sans MS, Courier New, and Tahoma. It is apparent from observing the letters in the affidavit that different font types print out in different measurable sizes, even though they are all ten-point font.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
I. CHOICE OF LAW
The parties disagree on whether Massachusetts or Rhode Island law governs this dispute. The critical question is the validity of the notice in the Rental Agreement which shifts primary responsibility away from Hertz. Under Rhode Island law, such a shifting provision is enforceable only if it complies with R.I. Gen. Laws. §3 l-34-4(b), which states in relevant part:
. . . the valid and collectable liability insurance or self-insurance providing coverage or liability protection for third party liability claims arising out of the operation of the rental vehicle shall be primary for the lessor or any person operating the motor vehicle, "with the express permission of the lessor unless otherwise stated in at least ten (10) point type on the face of the rental agreement.
(emphasis added).[2] Massachusetts law apparently contains no similar requirement.
This Court must employ the conflict of laws rules of Massachusetts, the forum state, to determine which state’s law applies. Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass.App.Ct. 492, 495 (2004). Massachusetts follows the functional approach set forth in the Restatement (Second) of Conflict of Laws. Taylor v. Eastern Connection Operating, Inc., 465 Mass. 191, 195 (2013); Bushkin Associates, Inc. v. Raytheon Co., 393 Mass. 622, 631 (1985); Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass.App.Ct. at 495-96. Section 188 of the Restatement sets forth principles pertinent to disputes involving questions of contract, and provides that the rights and duties of parties to a contract will be determined by the law of the state with the most significant relationship to the transaction and parties under the principles of §6. Bushkin Associates, Inc. v. Raytheon Co., 393 Mass. at 632; Clarendon Nat'l Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass.App.Ct. at 496-97.[3]
The relevant contacts in a contract action are the place of negotiation of the contract, the place of contracting, the place of performance, the location of the subject matter of the contract, and the domicil, residence, place of incorporation, and place of business of the parties. See Restatement (Second) of Conflict of Laws §188(2) (1971). The relevant factors under §6 are the needs of the interstate system; the relevant policies of the interested states and the relative interests of those states in determining the particular issue; the protection of justified expectations; the certainly, predictability, and uniformity of result; and the ease in the determination and application of the law to be applied. See Restatement (Second) of Conflict of Laws §6(2) (1971); Bushkin Associates, Inc. v. Raytheon Co., 393 Mass, at 634. Particularly close attention should be paid to protecting the parties’ justified expectations, the purpose sought to be achieved by the contract rules of the interested states, and the relation of each state to the parties and the transactions. Clarendon Nati Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass.App.Ct. at 497.
Hertz argues that Massachusetts has the most significant contacts with this case because the parties contemplated that the rental car would be operated in Massachusetts and returned to Logan Airport. However, the rental car was registered in Rhode Island, and *606 Clement executed the Rental Agreement in that state. Liability as the primary insurer in this case depends on the enforcability of the shifting provision in the Rental Agreement. The application of that provision was triggered by Clement’s decision not to obtain the liability insurance supplement, a decision made in Rhode Island when he executed the Rental Agreement.
Further, the application of the law of the state where the rental occurred, Rhode Island, promotes the needs of the interstate system; the protection of justified expectations; and the certainty, predictability, and uniformity of result. “Application of each state’s law to rental businesses operating in that state, regardless of the location of a collision, promotes predictability and uniformity, allowing businesses to identify their insurance needs with confidence, based on known information.” Newcomb v. Haywood, 2003 WL 138404 at *3 (Mass.Super.Ct.) (Fabiicant, J.) [ 15 Mass. L. Rptr. 531] (concluding, in suit for negligence, that law of state where car was rented applied rather then law of state where accident occurred). In contrast, application of the law of the state where an accident occurs would subject “a rental company, regardless of where the car was registered, insured and rented ... to vacillating laws.” Stathis v. National Car Rental Sys., Inc., 109 F.Sup.2d 55, 57 (D.Mass. 2000).
In addition, Rhode Island has an important interest in enforcing R.I. Gen. Laws. §31-34-4(b) in order to protect drivers who rent cars within its boundaries by ensuring that they have notice of a contractual provision which shifts primaiy coverage away from the rental company. Cf. Estate of Nunez-Polcano v. Boch Toyota, Inc., 2006 WL 1709680 at *4-5 (Mass.Super.Ct.) (Fabricant, J.) (in suit for negligent entrustment of rental car, law of state where car was rented, Massachusetts, applied rather than law of state of accident, Connecticut, where Massachusetts had significant interest in regulating conduct of rental car company operating within its borders). Massachusetts has no comparable interest in this matter. Accordingly, application of the factors set forth in §§6 and 188 of the Restatement dictates that Rhode Island law govern the dispute over which insurer is the primaiy insurer under the Rental Agreement.
II. LIABILITY UNDER RENTAL AGREEMENT
It is undisputed that Clement did not purchase the Liability Insurance Supplement. Accordingly, under the Rental Agreement, liability as the primaiy insurer shifts to Mercury’s insurer, St. Paul, and Hertz’s liability becomes excess. The Rental Agreement is enforceable if the notice of the shifting provision complies with R.I. Gen. Laws. §31-34-4(b), which states in relevant part:
. . . the valid and collectable liability insurance or self-insurance providing coverage or liability protection for third party liability claims arising out of the operation of the rental vehicle shall be primaiy for the lessor or any person operating the motor vehicle, with the express permission of the lessor unless otherwise stated in at least ten (10) point type on the face of the rental agreement.
(Emphasis added.)
A. Type Size
St. Paul first contends that the shifting provision in the Rental Agreement is not enforceable because the relevant language does not appear in ten-point type as required by R.I. Gen. Laws. §31-34-4(b). St. Paul argues that ten postscript points equals 3.52 millimeters and .1388 inches, and use of a ruler to measure the font in the Rental Agreement demonstrates that it is less than ten-point font. The defendants move to strike this argument from the plaintiffs brief on the ground that it is inadmissible and unreliable. This Court declines to strike St. Paul’s argument from its opposition brief and will consider it on the merits.
This Court agrees that the Google printout submitted as Exhibit 12 is not admissible for its truth. See Commonwealth v. Zeninger, 459 Mass. 775, 782, cert, den., 132 S.Ct. 462 (2011) (out-of-court statement offered for its truth is inadmissible unless it falls into a recognized hearsay exception). Nonetheless, even without Exhibit 12, St. Paul urges this Court to take judicial notice of the conversion formula. The court may take judicial notice of an adjudicative fact which is not subject to reasonable dispute in that it is capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned. Mass.G.Evid. 201(b) (2013). Judicial notice is appropriate with respect to matters which are verifiable by authoritative sources, and facts which are so notorious that they will not be disputed and must be accorded such strong significance that evidence in contradiction will ordinarily not be considered. Commonwealth v. Kingsbury, 378 Mass. 751, 755 (1979); Commonwealth v. Barrett, 1 Mass.App.Ct. 332, 335 (1973).
Judicial notice may be taken of mathematical certainties, computational methods that are generally accepted by scientists as irrefutable, and simple mathematical computations which are understandable to a layperson. See, e.g., Mellor v. Moe, 2007 U.S.Dist. LEXIS 71838 at *4 (S.D.Fla.), affd, 303 Fed.Appx. 744 (11th Cir. 2008) (court took judicial notice of conversion of miles per hour to feet per second); Buel v. Sims, 798 So.2d 425, 430 (Miss. 2001) (court took judicial notice of conversion from milligrams per deciliter to grams per milliliter); State v. Arena, 300 N.W.2d 81 (Wis.Ct.App. 1980) (court took judicial notice of conversion of feet per second to miles per hour). In the view of this Court, the formula for converting postscript points to millimeters can be verified by reference to authoritative sources and is not subject to reasonable dispute. Indeed, the defendants do not purport to challenge the formula itself; rather, they dispute whether application of the formula to physical mea *607 surements taken by St. Paul produced an accurate result.
Even taking judicial notice of the conversion formula, this Court concludes that St. Paul has not demonstrated that the paragraph at issue is typed in fewer than ten points. St. Paul argues that when measured with a ruler, the print is less than ten points because it is less than 1/8 of an inch (.125) and less than 3.52 millimeters (.1388). However, this assertion is not reliable because nothing in the summary judgment record reveals the font type employed in the Rental Agreement. As evidenced by Attorney Dolan’s affidavit, the same letter typed in different font types (i.e., Times New Roman, Arial, Courier, etc.) will measure slightly different sizes even though they are all typed in ten-point font.
Accordingly, St. Paul has failed to dispute the evidence in the summary judgment record that Hertz sets its internal computer system for producing rental agreements to ten-point font for those portions of the agreement mandated by Rhode Island law. On this record, St. Paul has no reasonable expectation of proving that the shifting provision in the Rental Agreement is not in ten-point font as required by R.I. Gen. Laws. §31-34-4(b).
B. Face of the Agreement
St. Paul further contends that the shifting provision in the Rental Agreement is not enforceable because the relevant language does not appear “on the face of’ the agreement as required by R.I. Gen. Laws. §31-34-4(b). There does not appear to be any Rhode Island case interpreting this statutory requirement or the term “face” generally as used in a statute.[4] When a statute contains clear language, the court will interpret it literally and give the words used their plain and ordinary meaning. Casale v. Cranston, 40 A.3d 765, 768 (R.I. 2012). In doing so, the court may refer to dictionary definitions. See McGuirl v. Anjou Int’l Co., 713 A.2d 194, 197-98 (R.I. 1998). See, e.g., Enterprise Rent-A-Car-Co. v. Kallejian, 2006 R.I. Super. LEXIS 159 at *11-12 (using dictionary definitions to interpret meaning of term “valid and collectible” in R.I. Gen. Laws. §31-34-4(b)).
The ordinary meaning of the term “face” is “the surface of anything, especially the front, upper, or outer part.” Black’s Law Dictionary (9th ed. 2009). Accordingly, this Court agrees with St. Paul that the “face” of the agreement is the first page. See Rosati v. Vaillancourt, 848 So.2d 467, 471 n.2 (Fla.Dist.Ct.App. 2003) (noting that trial judge found that Fla. Stat. 627.7263, which allows shifting of primary responsibility to lessee if notice appears “in at least ten point type on the face of the rental agreement,” was not satisfied where shifting language appeared on page 11 of agreement); International Ins. Co. v. Ryder Truck Rental, 555So.2d 1250, 1251 (Fla.Dist.Ct.App. 1989), rev. den., 564 So.2d 487 (Fla. 1990) (concluding that notice which appeared in addendum on separate piece of paper which was attached to front of rental agreement satisfied requirement that it appear on “face” of agreement). Cf. Roberts v. Enterprise Rent-A-Car Co. of Boston, Inc., 438 Mass. 187, 193 (2002) (describing various statutes which require collision damage waiver notice to appear “on the face of the agreement” as statutes which require notice to appear in a specific location within agreement). See also Plumbing Supply Co., Inc. v. Bi-County Plumbing and Heating Co., Inc., 404 N.Y.S.2d 964, 966 (N.Y.App.Div. 1978) (statute which required certain language to appear on “face” of application for contempt required it to appear on front of application to give defendant immediate notice, and was violated where language appeared on fourth page).
The shifting provision at issue does not comply with R.I. Gen. Laws. §31-34-4(b) because it appears on the final, rather than the first, page of the Rental Agreement. The provision is therefore ineffective to shift Hertz’s responsibility from primary to excess, and Hertz is responsible as the primary insurer.
ORDER
For the foregoing reasons, it is hereby ORDERED that Defendants’ Motion to Strike Plaintiffs Argument Regarding Font Size from Opposition to Defendants’ Motion for Summary Judgment be DENIED. It is further ORDERED that Plaintiff St. Paul Fire and Marine Insurance Company’s Motion for Summary Judgment be ALLOWED and that Defendants’ Motion for Summary Judgment be DENIED. It is DECLARED and ADJUDGED that Hertz is the primary insurer of Luc Clement with respect to the July 23, 2006 accident.

he term “lessor” “includes any entity in the business of renting motor vehicles pursuant to a written rental agreement.” R.I. Gen. Laws. §31-34-4(c).

St. Paul’s citation to §193 of the Restatement is inappo-site, as that section governs choice of law with respect to liability insurance contracts. This case does not involve interpretation of an insurance policy but rather, application of the Rental Agreement. In any event, under the facts of this case, this Court cannot place the location of the insured risk in one state, the primary factor in applying §193; accordingly, §188 applies. See Clarendon Nat’l Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass.App.Ct. at 496-97.

Hertz cites Merrimack Fire Ins. Co. v. Dufault, 958 A.2d 620, 625 (R.I. 2008), for the proposition that “face” means the complete text of a document without reference to a particular location. This Court is not persuaded, because the court in Merrimack was analyzing whether ambiguity existed in an insurance policy, and stated only that a policy “unambiguous on its face” must be enforced as written. Id. In that context, the face of a document refers to the contents of the document itself, as opposed to extrinsic evidence. In the view of this Court, however, the Merrimack case does not shed light on the meaning of the term “face” as used in R.I. Gen. Laws. §31-34-4(b).